**ALAMO HEALTH & ACCIDENT INS. CO. v. CARDWELL.**

**No. 2912.**

Court of Civil Appeals of Texas. El Paso.
Jan. 11, 1934.

Rehearing Denied Jan. 25, 1934.

R. R. Robertson, of Dallas. for appellant.

Otis Rogers, of Fort Worth, and Joe Spurlock, of Fort Worth, for appellee.

PELPHREY, Chief Justice.

On July 10, 1930, appellant issued a health and accident insurance policy insuring William T. Cardwell, among other things, against loss of life. Among others, the policy contained a provision that, in the event of the loss of life through accidental means, after fifteen days from the date of the policy and within ninety days from the date of accident, appellant would pay to appellee, the brother of William T. Cardwell and the beneficiary named in the policy, the sum of $2,000. On September 14, 1930, William T. Cardwell, while riding in an automobile owned and being driven by George Gosnell on South Harwood street in the city of Dallas, Tex., was thrown from the automobile and injured. His fall was occasioned by a collision between the automobile and a street car, the door of the automobile coming open, allowing him to be thrown out. He was unconscious from the time of his injury until his death, which occurred on the 17th.

Appellee duly made demand, and, upon a denial of liability by appellant, this suit was filed by him seeking to recover the $2,000 and 33⅓ per cent. as attorney's fees. The cause was submitted to a jury on special issues, which, together with the jury's answers thereto, were:

"Special Issue No. 1: Do you find from a preponderance of the evidence that $12.50 represented by check, was given to W. E. Dean in payment of policy fee and monthly assessment? Answer: Yes.

"Special Issue No. 2: Do you find from a preponderance of the evidence that the insured, William T. Cardwell, was not in any degree under the influence of intoxicating liquors at the time of the accident? Answer: Yes.

"Defendant's Requested Special Issue No. O: If immediately before the collision in

question George Gosnell was under the influence of intoxicating liquors, did he and William T. Cardwell act together in driving or causing to be driven the automobile in which they were riding on Harwood Street immediately before the collision in question? Answer: No.

"Defendant's Requested Special Issue No. G: Did the injuries received by William T. Cardwell in the collision in question result directly through accidental means independently and exclusively of all other causes? Answer: Yes.

"Defendant's Requested Special Issue No. F: Was the failure, if any, of William T. Cardwell (immediately before the collision in question) to use such care for his own safety as *an* reasonably prudent person would have used under the same or similar circumstances, a proximate cause of the injuries which resulted in his death? Answer: No.

"Defendant's Requested Special Issue No. E: Did William T. Cardwell immediately before the time of the collision in question failed to use such care as an ordinarily prudent person under the same circumstances would have used for his own safety? Answer: No."

Upon the above findings, the trial court awarded appellee judgment for $2,000, together with interest thereon from September 17, 1930.

Appellant filed its motion for a new trial, and, upon it being overruled, this appeal followed.

### Opinion.

Appellant's first complaint is that the trial court refused to instruct a verdict in its favor; its contention being that appellee failed to furnish to it proof of loss or proof of death; failed to show a waiver of the provisions of the policy in such respect; and failed to prove that the policy was still in force at the time the accident and death of the insured occurred. Section 3 of the general provisions of the policy reads: "Written notice of injury or sickness on which any claim under this policy shall be based must be given to the company within ninety-one days after date of accident, or commencement of sickness, and said notice may be given direct to the Home Office, or to the nearest and most convenient authorized local agent of the Company. * * * *"

Section 5 reads: "No action at law or equity shall be brought to recover on this policy prior to the expiration of ninety days after proof of loss has been filed in accordance with the requirements of this policy nor shall such action be brought at all unless brought within two years and one day from the expiration of the time within which proof of loss is required by the policy."

In the absence of a waiver by the insurer, where a policy requires the insured to furnish notice and proofs of loss within a specified or reasonable time, compliance with the requirement is a condition precedent to recovery. 24 Tex. Jur. § 279, p. 1090, and authorities cited, but it has also been held that a denial of liability or a refusal to pay not predicated on the failure to furnish proofs is a waiver of any objection on that ground, irrespective of whether the denial precedes or follows the time within which proofs should have been furnished. 26 C. J. § 522, pp. 407, 408; Oklahoma Fire Ins. Co. v. McKey (Tex. Civ. App.) 152 S. W. 440; Connecticut Fire Ins. Co. v. Hilbrant (Tex. Civ. App.) 73 S. W. 558.

In the case at bar appellant denied liability on the ground that the policy was not in force at the time of the accident, thereby, under the above authorities, waiving the requirements of the policy as to proof of loss.

There is a further reason also why appellant's contention should be overruled. Article 5546, Revised Statutes, provides that, in cases where notice of claim for damages is required, it shall be presumed that such notice has been given, unless want of notice is especially pleaded under oath. Francis v. International Travelers' Ass'n (Tex. Civ. App.) 260 S. W. 938, affirmed 119 Tex. 1, 23 S.W.(2d) 282.

Here we find no such pleading.

As to whether or not the policy was in force at the time of the accident and death, there appears to be a conflict in the testimony.

There appears in the record a check for $12.50, signed by W. T. Cardwell, and which, after being indorsed by W. E. Dean, was paid by the Bank on June 24, 1930. It is not disputed that this check was given, at least partly, to cover the cost of the policy issued by appellant to W. T. Cardwell on July 10, 1930. It is true that there appears in the record an affidavit to the effect that $3.50 of that sum was owing to Dean by Cardwell as a personal debt, but it is also clear from the record that Cardwell, before he was injured, was claiming credit from appellant for the whole amount. From these facts there arose a jury question as to whether the whole amount of the check was in payment of insurance or only $9 thereof. This question was answered adversely to appellant.

While Appellant's Exhibit No. 3 shows that the policy lapsed on August 10, 1930, yet we find in the record the following correspondence:

"Receipt is acknowledged of your letter of the 22nd stating that you paid the agent for three months. The agent in this case was Mr. W. E. *Dunn* and he did not indicate that you paid up for a period of three months, but to the contrary stated that you wanted to pay your premium monthly.

"We are today communicating with Mr. *Dunn* with reference to this transaction and

as soon as we hear from him, we shall advise you."

And:

"We have been unable so far to get any response from Mr. Deen regarding the quarterly premium you stated you paid him.

"If you have the receipt Mr. Deen gave you, we shall appreciate it very much if you will forward it to this Company for inspection and as soon as we have inspected it, we will return it to you.

"Please give this immediate attention as we are very anxious to get the matter straightened out with Mr. Deen."

The first letter was written August 23rd, and the second one September 10th.

These letters, it seems to us, show that appellant (granting that the policy was subject to forfeiture) was, nevertheless, treating it as valid and binding after the date upon which it is now claimed the policy lapsed, and in so doing waived the forfeiture thereof.

■ The law abhors forfeitures, and will seize upon even slight circumstances indicative of an intention to waive a forfeiture. Stone v. Brady Mut. Life Ins. Ass'n (Tex. Civ. App.) 2 S.W.(2d) 538; Dunken v. Ætna Life Ins. Co. (Tex. Civ. App.) 221 S. W. 691; Calhoun v. The Maccabees (Tex. Com. App.) 241 S. W. 101; Texas State Mutual Fire Ins. Co. v. Leverette (Tex. Civ. App.) 289 S. W. 1032; New York Underwriters Ins. Co. v. Brittain (Tex. Civ. App.) 62 S.W.(2d) 168.

■■ Appellant's assignment of error No. 29 is based upon the following provision of the policy: " * * * In no event will the company be liable to any claim, under principal or maximum sum, for an amount in excess of fifty per cent of the regular indemnities provided herein if loss results within thirty days from date of accident, notwithstanding any provisions to the contrary."

In view of the fact that the record shows that death occurred within thirty days from the accident, appellant insists that the judgment should have been for only $1,000.

A further examination of the policy reveals the following provision:

"Accident Indemnities.

"Special Indemnity—Loss of Life, Limb or Sight.

"Indemnity for Loss of Life Payable to Beneficiary: All Other Indemnities to the Insured.

"Article 1: If such injuries through Accidental Means shall totally and continuously disable the Insured from the date of accident from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous total disability, and within ninety days from the date of accident, shall result, directly, independently and exclusively of all other causes in any one of the losses enumerated below, the company will pay the sum set opposite such loss, which sum shall include any claim for disability."

"Principal Sum $2,000.00.

"Loss of Life—The Principal Sum."

The last-quoted provision appears on the first page of the policy, while the one upon which appellant depends appears on the third page, and appellee takes the position that there is a direct conflict between the two provisions, and that it is our duty to construe the policy strictly against the insurer, and that by so doing the judgment for $2,000 should be affirmed.

With such position we cannot agree. In the construction of insurance contracts, we understand the rule to be that the policy should be so interpreted with a view to the whole context, so as, if possible, to give a sensible meaning and effect to all its provisions and to avoid rendering portions of it contradictory and inoperative by giving effect to some clauses and nullifying others. Cyc. of Insurance Law (Couch) vol. 1, § 180, p. 368.

In pursuance of such rule, we are forced to the conclusion that both of the articles here in question must be given effect; there being no irreconcilable conflict between them.

This being true, then the judgment should have been for 50 per cent. of the provided indemnity, or $1,000.

■ Appellant's further contention is that it should have been permitted to pay the amount awarded in twenty-five equal monthly installments by virtue of the following provision in the policy: " * * * And all claims for any accident specified under the principal, maximum or beneficiary sum of this policy shall be paid in twenty-five equal monthly installments."

Cardwell died on September 17, 1930; trial in this cause was not had until November, 1932, and judgment entered in December following. The time in which the installments should have been paid had passed, and we cannot agree that appellant should now be entitled to pay in installments. It appears to us that such a provision contemplates the immediate and successive payments of such monthly installments.

We have carefully considered the many assignments presented, find no error, except that the judgment should be modified, and appellee allowed judgment for the sum of $1,000 instead of the $2,000 allowed by the trial court.

The judgment, as thus modified, is affirmed.