

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

November 18, 1959

Honorable Bill Allcorn
Commissioner
General Land Office
Austin 14, Texas

Opinion No. WW-732

Re: Remittance which may
be made pursuant to
Article 5421m, Section
19(A), Vernon's Civil
Statutes, to a success-
ful bidder at a sale of
forfeited land who re-
fuses to execute a
contract of sale and
purchase.

Dear Mr. Allcorn:

Your request for an opinion states that a qualified
bidder who was awarded a tract of land at a Veterans Land Board
sale of forfeited land on March 5, 1959, has refused to execute
a contract of sale and purchase for such land. You also state
that the veteran submitted to the Veterans Land Board with his
bid a 5% down payment on $7,500.00, or $375.00, a contract ser-
vice fee of $25.00, a closing expense fee of $25.00 and a check
for $155.00, which was the amount that his bid was in excess of
$7,500.00. The veteran did not submit a sum in excess of the
5% down payment.

You request our opinion on the following questions:

1. In compliance with the provisions of Section 19(A)
of Article 5421m, Vernon's Civil Statutes, which of the required
remittances (five per cent down payment, contract service fee
and closing expense fee), if any, may be refunded to the veteran
after he has refused to execute the contract of sale and purchase

2. Should the excess remittance above $7,500.00 which
the veteran submitted with his bid be refunded or forfeited and
deposited in the State Treasury?

Section 19(A) of Article 5421m, V.A.C.S., states:

"The resale of land which has been forfeited under the provisions of this Act may be made to the highest bidder; provided, however, that sale shall be made to qualified veterans only and under the same terms and conditions as provided elsewhere in this Act for original sales. Such sales shall be held at such times and in such manner as the Board may prescribe, and the Board shall have the right to reject any and all bids. If the successful bidder refuses to execute a contract of sale and purchase, all moneys submitted with his bid shall be forfeited and deposited in the State Treasury and credited to the Veterans Land Board Special Fund."

There are five distinct amounts of money to be considered in this opinion.

Three of these amounts of money are required by the Legislature to be submitted by veterans with their bids when bidding for forfeited land under Section 19(A) of Article 5421m, the Veterans Land Act:

(1)  5% down payment on $7,500.00 not to exceed $375.00 (Article 5421m, Section 17);

(2)  A $25.00 closing fee (Article 5421m, Section 21);

(3)  A $25.00 service fee (Article 5421m, Section 21).

Two of these amounts of money are not required by the Legislature to be submitted with a veteran's bid when bidding for forfeited land under Section 19(A) of Article 5421m, but are required by the Veterans Land Board, as a matter of policy and convenience, to be submitted with the veteran's bid:

(4)  The amount of money by which the veteran's bid exceeds $7,500.00; and

(5)  An amount of money equal to as much of the down payment in excess of 5% as the veteran desires to submit.

The Veterans Land Act does not contain one word about the amount of money in excess of the 5% down payment that a veteran might desire to submit along with his bid. Therefore, the

Legislature did not require this particular amount of money to be submitted with a veteran's bid for forfeited land.

The Act, however, does speak of the amount of money the veteran's bid exceeds $7,500.00. In Section 16 of Article 5421m the Act states:

". . . provided the veteran pays cash for all the purchase price over Seven Thousand Five Hundred Dollars ($7,500.00)."

This is the only reference to this amount of money in the entire Act. As can be seen the question as to when this amount of money must be paid is not answered. We submit that the Legislature intended this amount of money to be paid at least by the time the contract of sale between the veteran and the Veterans Land Board is consummated but not when the veteran bids on the land. Our reason for this is that the Legislature used the words "pays cash." This indicates that a cash transaction is intended and implies that the money should change hands by the time of the consummation of the transaction, the execution of the contract of sale. 77 C.J.S., Section 234, "Sales". Certainly, the veteran's bid, or offer, is not the consummation of the transaction, but the beginning thereof. Therefore, the Legislature did not require that this particular amount of money be submitted with a veteran's bid for forfeited land.

We do not mean by this opinion that the Veterans Land Board does not have the right or power to require the two additional amounts to be submitted at any time the Veterans Land Board so desires. This power is given to the Veterans Land Board under Section 21 of Article 5421m. However, this statutory provision does not answer the question of whether these additional sums are included in the forfeiture provisions of Section 19(A) of Article 5421m.

When a veteran desires to bid on forfeited land under Section 19(A) of Article 5421m, he submits his bid along with the five amounts of money listed above to the Veterans Land Board. The highest bid is accepted by the Veterans Land Board. After this the veteran is expected to enter into a contract of sale with the Veterans Land Board. If the veteran refuses to enter into this contract of sale a forfeiture comes into play under Section 19(A) of Article 5421m, which states in part:

"If the successful bidder refuses to execute a contract of sale and purchase, all moneys submitted with his bid shall be forfeited. . ."

Consequently, the question presented by this opinion request is this:

Does the statute require all moneys to be forfeited which were submitted with a veteran's bid even though some of the moneys were not required by the Legislature to be submitted therewith, but were required as a matter of policy and convenience by the Veterans Land Board?

Our answer to this question is no, and the following cases dealing with forfeitures are in point:

Cox v. Payne, 174 S.W. 817 (Tex.Sup.Ct. 1915) lays down this general principle:

". . . A fundamental principle of construction of statutes that terms of forfeiture are to be strictly construed . . ."

The case of Crumley v. Ramsey, 93 S.W.2d 191 (Tex. Civ.App. 1936, writ ref.) stated the general rule this way:

". . . therefore in order to be effective (a forfeiture) should be clear and unequivocal; and, if there is a reasonable doubt as to the meaning of the terms employed, preference should be given to that construction which will avoid the forfeiture." (Clarification added.)

In the case of Sheppard v. Avery, 34 S.W. 440 (Tex. Sup.Ct. 1896), the Supreme Court stated this rule pertaining to forfeiture:

". . . forfeiture . . . is not favored by the Courts, and laws will be construed to prevent, rather than to cause such forfeiture. Hill v. Kerr, 78 Tex. 217, 14 S.W. 556."

The law abhors forfeitures; equity abhors forfeitures. Alamo Health and Accident Insurance Company v. Cardwell, 67 S.W.2d 337 (Tex.Civ.App. 1934, writ dis'm.); Supreme Forest Woodmen Circle v. Hornsby, 107 S.W.2d 393 (Tex.Civ. App. 1937, no writ).

Therefore, in view of the mandate of the courts of Texas to strictly construe forfeitures so as to forfeit only those items which are beyond reasonable doubt it is our opinion

that only the following three sums of money required by the Legislature to be submitted with a veteran's bid may be forfeited:

(1)  5% down payment on $7,500.00, not to exceed $375.00:

(2)  The $25.00 closing fee; and

(3)  The $25.00 service fee.

As to the closing fee and service fee required by Section 21 of Article 5421m, V.C.S., the statute also provides that:

"Any such fees, or a portion thereof, which in the opinion of the Board are unused, shall be refunded."

Therefore, any unusued portion of the closing or service fees should not be forfeited but should be returned to the veteran if the Board finds that such fee or portion thereof remains as an unused balance.

The following two amounts of money required to be submitted with a veteran's bid by the Veterans Land Board as a matter of policy and convenience are not required to be forfeited and must be refunded:

(4)  The amount of money by which the veteran's bid exceeds $7,500.00; and

(5)  An amount of money equal to as much of the down payment in excess of 5% as the veteran desires to submit.

SUMMARY

Section 19(A) of Article 5421m, V.C.S., requires the Veterans Land Board to forfeit the 5% down payment, the used portion of the closing fee, and the used portion of the service fee, when the successful bidder refuses to execute the contract of sale and purchase; however, the amount of money that the veteran's bid exceeds $7,500.00 and the amount of money in excess of the 5% down payment

Honorable Bill Allcorn, page 6 (WW-732)

that the veteran may have submitted with his bid
must be refunded, as well as the portion of the
closing and service fees which in the opinion of
the Board are unused.

Yours very truly,

WILL WILSON
Attorney General

By Paul Floyd
Assistant

PF:dhs

APPROVED:
OPINION COMMITTEE

Geo. P. Blackburn, Chairman

Riley Fletcher
Jack Goodman
Houghton Brownlee, Jr.

REVIEWED-FOR THE ATTORNEY GENERAL
BY:   W. V. Geppert