## H. L. BROWN ET AL V. ECTOR SMITH ET AL.

No. 8095.  Decided July 7, 1943.
Rehearing overruled October 13, 1943.
(174 S. W., 2d Series, 43.)

*Hardwicke & Cheek,* of Fort Worth, and *Orgain, Carroll & Bell,* of Beaumont, for petitioners.

The Court of Civil Appeals erred in holding that the oil, gas and mineral lease executed and delivered by the record owners of the title to a part of the land in controversy did not constitute a cloud on the title on the theory that the judgment obtained by plaintiffs against the record owners on their disclaimer and against another by agreement and that Ector Smith had matured a ten year limitation title to the 62.75 acres in controversy. State Mort. Corp. v. Traylor, 120 Texas 148, 36 S. W. (2d) 440; Burt v. Deorsam, 227 S. W. 354; Burke-Simons Co. v. Konz, 178 S. W. 587; Van Deventer v. Gulf Prod. Co. 41 S. W. (2d) 1029; Hamburger & Dreyling v. Thomas, 103 Texas 280.

*M. L. Lefler* and *W. O. Bowers, Jr.,* both of Beaumont, for respondents.

As to whether the lease constitutes a cloud of title. Humphreys v. Skelly Oil Co., 83 Fed. (2d) 989; Texas Co. v. Daugherty, 107 Texas 226, 234, 176 S. W. 717; Broughton v. Humble Oil & Refining Co., 105 S. W. (2d) 480; Collier v. Caraway, 140 S. W. (2d) 910; Murphy v. Jamison, 117 S. W. (2d) 127, 129.

MR. JUDGE SMEDLEY of the Commission of Appeals delivered the opinion for the Court.

Respondents Ector Smith and Floyd Smith and their wives sued petitioners H. L. Brown and W. R. Wheeler and escrow agent, Security State Bank & Trust Company of Beaumont, to recover $6,275.00, representing the consideration or bonus for an oil and gas lease which had been executed and deposited in the bank, together with the said consideration or bonus and a written contract between respondents and petitioners. The suit is by the vendors or lessors against the purchasers or lessees for the specific performance of the contract. The defense made by petitioners is that the abstracts of title delivered to them by respondents did not show good title as required by the contract and that respondents did not cure the defects in the title which were pointed out to them.

The case was tried by the court without a jury and judgment was rendered in favor of respondents against petitioners for $6,275.00 and in favor of the bank for $125.00 as its attorney's fees, to be taxed as costs, the clerk of the court being directed to apply the sum of $6,275.00, which had been paid by the bank

into the registry of the court, first to the payment of costs and then to the judgment rendered in favor of respondents. The Court of Civil Appeals affirmed the trial court's judgment. 168 S. W. (2d) 513.

The substance of the written contract is as follows: The attached oil and gas lease made a part of the contract and executed on the same date, June 15, 1939, by Ector Smith and wife and Floyd Smith and wife as lessor to H. L. Brown and W. R. Wheeler, as lessee, together with a cashier's check for $6,275.00, is deposited in the bank in escrow, subject to specified terms and conditions. These are that lessor shall forthwith prepare and deliver to lessee for examination a complete abstract of the title to the land described in the lease, allowing ten days for examination of the title by lessee's attorneys; that if title to the land is shown by the abstract to be good, the lessee shall accept the lease and it shall be delivered to lessee and the check shall be delivered to lessor; that if the title is not good as shown by the abstract, the lessor shall have a reasonable time, not to exceed six months, in which to cure the defects in the title pointed out to him, and that if the defects are cured within that time the lease shall be consummated by delivery; and that if the title is not good and cannot be made good in the six months specified, the contract shall be at an end and the check shall be returned to the lessee.

The lease accompanying the contract and deposited in the bank contains, with the exception of a single paragraph hereinafter quoted, the terms and conditions usually appearing in oil and gas leases of Texas land. It designates Ector Smith and wife and Floyd Smith and wife lessor, and H. L. Brown and W. R. Wheeler lessee, is for a term of five years and as long thereafter as oil, gas or other mineral is produced from the land, obligates the lessee to pay to the lessor the usual one-eighth royalties and provides for an annual rental of $313.75 for deferring commencement of drilling operations. The land described in the lease is a tract of 62.75 acres in Jefferson County described by metes and bounds. Immediately after the description by metes and bounds, the lease contains the following paragraph:

"Of the acreage above described, the said Floyd Smith and wife, Bertha Smith, own twenty (20) acres and the said Ector Smith and wife, Ada Smith, own 42.75 acres, and it is understood and agreed as between Lessors, that the rents and royalties hereinafter stipulated to be paid on said 62.75 acre tract are to be pooled and shared by said Lessors in proportion to acreage owned."

Petitioners' attorneys prepared several title opinions, which were submitted to respondents, pointing out defects in the title shown by the abstracts delivered to them by respondents for examination, the opinions being dated June 15, 1939, September 15, 1939, December 15, 1939, and March 16, 1940. Many of the defects were cured by instruments appearing in additional abstracts which were prepared by respondents and submitted to petitioners' attorneys. In their opinion dated September 15, 1939, petitioners' attorneys, as one of the objections to the title, called attention to the fact that Mrs. C. B. Lee was shown by the abstract to be the owner of a one-thirty-second royalty interest in 20 acres of the 62.75 acre tract described in the lease and they required that she join in the execution and delivery of the oil and gas lease to petitioners. In their opinion dated December 15, 1939, and in their final opinion, disapproving the title, dated March 25, 1940, the attorneys pointed out that this defect in the title had not been cured.

Petitioners, under several assignments, insist that there remained other material defects in the title, but because of the conclusions hereinafter expressed we discuss only the question presented as to the royalty interest owned by Mrs. Lee.

The record shows, as the lease recites, that of the 62.75 acres described in the lease Ector Smith is owner of 42.75 acres, the east part of the 62.75 acres, and that Floyd Smith is the owner of 20 acres, the west part of the 62.75 acre tract. Floyd Smith's owneroship of the 20 acres, however, is subject to a one-thirty-second royalty interest owned by Mrs. Lee. The lease, which is the subject of the escrow agreement and was to be delivered to petitioners if good title was shown by the abstracts, is executed by Ector Smith and his wife and Floyd Smith and his wife "lessor, whether one or more" to petitioners as "lessee." It provides for the payment of royalties to lessor or to the credit of lessor, and the obligations, covenants and undertakings of the parties are, according to the terms of the lease, those of lessor and lessee. The lease contains the paragraph quoted above, the substance of which is that Floyd Smith and wife own 20 acres of the land described in the lease and Ector Smith and wife own 42.75 acres of it, and that the rents and royalties stipulated to be paid on the 62.75 acre tract are to be pooled and shared by the lessors in proportion to the acreage owned.

To what extent would Mrs. Lee's royalty interest in the 20 acres be affected by the execution and delivery of the lease

executed by Floyd Smith and Ector Smith and deposited in the bank with the escrow agreement?

On March 10, 1930, Mrs. Lee by warranty deed conveyed to Floyd Smith 20 acres of land described by metes and bounds, and being the west part of the 62.75 acre tract. The deed contains the following reservation:

"But it is expressly understood between the Grantor and Grantee herein and that as a part of the consideration for the land hereby conveyed, there is a reserve to the Grantor herein, her heirs and assigns forever, a one-thirty-second (1/32) royalty interest in and to all the oil, gas and other minerals in, upon or under the above described property, such royalty to be delivered to the Grantor her heirs, or assigns, as is usual where oil, gas or other minerals are produced and saved from said land. But the Grantee herein, his heirs or assigns are not and shall not be under any obligations to drill or otherwise operate said land for the production of oil, gas or other minerals except at his option."

Later, Floyd Smith and Ector Smith sued Mrs. Lee for the title and possession of the 62.75 acre tract, and on July 8, 1937, an agreed judgment was rendered, by which Floyd and Ector Smith recovered from Mrs. Lee the title and possession of the land sued for, except that title and possession of a one-thirty-second royalty interest in the oil, gas and other minerals in the 20 acre tract were adjudged to Mrs. Lee.

Petitioners contend that the interest and rights of Mrs. Lee are to be measured by the judgment rather than by the terms of the reservation contained in Mrs. Lee's deed to Floyd Smith, but for this opinion we assume the correctness of the position taken by respondents that the judgment was intended to recognize, or to award to Mrs. Lee, the title and rights that were reserved in her deed to Floyd Smith.

■ Mrs. Lee in her conveyance of the 20 acre tract to Floyd Smith reserved a one-thirty-second royalty interest in all of the oil, gas and other minerals in the land, the royalty, meaning of course all of the one-thirty-second royalty, to be delivered to her, her heirs or assigns *as is usal* where oil, gas or other minerals are produced and saved *from said land*. She did not reserve the right to execute or join in the execution of mineral leases of

the land. It may be granted, as was said in Schlittler v. Smith, 128 Texas 628, 101 S. W. (2d) 543, that when a grantor reserves to himself a royalty interest he contemplates the leasing of the land for production, and that if he reserves to himself no right of leasing, the grantee possesses that right. But it does not follow that Mrs. Lee's deed invested her grantee with the right or authority to pool her royalties with royalties from other land that might thereafter be included with it in a lease. Gulf Oil Corporation v. Marathon Oil Co., 137 Texas 59, 82, 152 S. W. (2d) 711.

■ The royalty interest reserved by Mrs. Lee is an interest in land. Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 102, 80 S. W. (2d) 741; Sheppard v. Stanolind Oil & Gas Co., 125 S. W. (2d) 643, (application for writ of error refused); Tennant v. Dunn, 130 Texas 285, 110 S. W. (2d) 53; O'Connor v. Quintana Petroleum Co., 134 Texas 179, 133 S. W. (2d) 112, 134 S. W. (2d) 1016, 128 A. L. R. 843. The language used, by which Mrs. Lee reserved to herself the one-thirty-second royalty interest in all of the 20 acres conveyed, with provision that the royalty be delivered to her as is usual where oil, gas or other minerals are produced and saved, negatives the existence of an intention to confer upon her grantee the power or authority to convey or in any way dispose of any part of the royalty interest which she reserved.

■ An oil and gas lease jointly executed by the owners of two or more tracts of land owned in severalty, with provision for pooling or sharing, on the basis of acreage, the royalties from oil or gas produced anywhere on the leased land, has the effect of vesting all of the lessors, at least during the life of the lease, "with joint ownership of the royalty earned from all the land in such block." Veal v. Thomason, 138 Texas 341, 349, 159 S. W. (2d) 472. The ease so executed is a conveyance by each lessor to each of the other lessors of an undivided interest in the royalties. Lusk v. Green, 114 Okla. 113, 245 Pac. 636. The joint ownership of the royalty interest in all of the land included in such lease is created by the action of the several land owners in joining in the execution of the lease. French v. George, 159 S. W. (2d) 566, 569, (application for writ of error refused.)

Had Mrs. Lee, the owner of the outstanding royalty interest in the 20 acre tract, joined in the execution of the oil and gas lease, she would have become a party to the pooling agreement contained in the lease and thereby, in effect, she would have conveyed to the owner of the 42.75 acres a part of her interest

in the royalty in the 20 acres and would have become the owner of an undivided interest in the royalty in the 42.75 acres. Since Mrs. Lee did not join in the lease, the execution and delivery of it by Floyd and Ector Smith would neither divest her of any part of her royalty interest in the 20 acre tract nor vest in her any interest in the royalty in the 42.75 acres. Martel v. A. Veeder Co., 199 La. 423, 6 So. (2d) 335.

From the conclusion that Mrs. Lee's royalty interest in the 20 acre tract, and her rights incident thereto, would not be affected by the pooling agreement in the lease executed by Floyd and Ector Smith it follows, in our opinion, that petitioners were justified in disapproving the title when respondents failed to satisfy the requirement that Mrs. Lee join in the execution and delivery of the lease. Petitioners' contract was for the execution and delivery to them of an oil and gas lease under which the royalties from all the land, although the lease included two tracts separately owned, would be pooled and paid in proportion to the acreage owned. The lease which this suit seeks to force petitioners to accept is materially a different lease. Under it, Mrs. Lee would be entitled to a one-thirty-second royalty, one-fourth of the one-eighth royalty, in all of the oil, gas or other minerals produced from the 20 acre tract and to none of the royalty from the remaining 42.75 acres. The pooling agreement contained in the lease would affect only the royalty interests reserved in the lease by Floyd Smith and Ector Smith.

We cannot sustain respondents' contention that, because the lease reserves "one-eighth royalty in the 62.75 acres sufficient to take care of Mrs. Lee's one-thirty-second royalty in 20 acres thereof," the seven-eighths leasehold interest which petitioners contracted to acquire is in no way affected by Mrs. Lee's ownership of the outstanding royalty interest and her failure to join in the lease. The owner of the leasehold estate is interested in an effective agreement for the pooling of all royalties payable under the lease. When a pooling agreement which binds all of the royalty owners has been made, the lessee, has greater freedom in the selection of locations for the drilling of wells on the land covered by the lease, for each of the land owners or royalty owners is entitled to his share of the royalties from all wells drilled anywhere on the land, instead of being entitled to receive only royalties arising out of the production from a certain part of the leased land. Controversies and probable liability on account of drainage are avoided. For example, would Mrs. Lee, not having joined in the lease, acquiesce in the drilling and operation of wells on the 42.75 acre tract that would drain oil from the 20 acre tract in which she owns the royalty interest?

The provision in Mrs. Lee's deed to Floyd Smith, made in connection with her reservation of the royalty interest, that the grantee shall not be under obligation to drill or operate the land for the production of oil, gas or other minerals, except at his option, is intended to protect the grantee against the implication of an obligation to develop or operate the 20 acre tract for production to pay the royalties reserved. It has no relation to drainage by wells drilled on other land or to the question of pooling the reserved royalties with royalties from other land.

Petitioners would suffer other disadvantages from the acceptance of a lease in which Mrs. Lee did not join. Among them may be mentioned the necessity for the construction and maintenance of separate measuring tanks on each of the two tracts for the calculation of Mrs. Lee's one-fourth of the royalties of oil and gas produced from the 20 acres and the keeping of separate books and records. In many respects the burdens and obligations of petitioners under the lease tendered by respondents would be the same as they would be under two separate leases, one affecting the 20 acre tract and the other affecting the 42.75 acre tract. In short, the lease tendered was, in a substantial particular, important to the lessee, not the lease that petitioners contracted to acquire.

The judgments of the district court and the Court of Civil Appeals, except that part of the same which adjudged that Security State Bank & Trust Company of Beaumont go hence and recover its costs, including $125.00 as attorney's fees, and that John O. Banks go hence with his costs, are reversed. Judgment is here rendered that respondents take nothing by their suit, and that out of the sum of $6,275.00 which was deposited by Security State Bank & Trust Company of Beaumont in the registry of the district court, the clerk of that court pay first the costs in that court, including the attorney's fee of $125.00, and pay to petitioners the balance of said sum so deposited; and judgment is here rendered in favor of petitioners H. L. Brown and W. R. Wheeler on their cross action against respondents Ector Smith and Floyd Smith for the amount of the costs, including the attorney's fees of $125.00, paid by the clerk of the district court as herein provided out of the sum deposited in the registry of the court.

Opinion adopted by the Supreme Court July 7, 1943.

Rehearing overruled October 13, 1943.