On November 3, 1944, the Ohio Oil Company deposited in the registry of the court $869.97, representing .0136719 royalty interest of oil produced from ten acres of land in the southwest corner of the E 1/2 of SE 1/4 of NW 1/4 bounded on the South by the forty line and on the North by the Baucum Spur Highway in Section 22, Township 23 N, range 8 W, which sum was claimed by both John B. Kennedy and Claud Beene. After both Kennedy and Beene had answered the suit setting forth their respective claims to the fund on deposit, Beene moved for judgment on the pleadings and judgment Was rendered in his favor; decreeing him to be entitled to *Page 505 
the fund on deposit. From this judgment, defendant, Kennedy, prosecutes this appeal, and in this court has filed a plea of unconstitutionality of Act 157 of 1940, of Order 35 dated February 6, 1942, and Order 35 — 4 dated March 23, 1942, by the commissioner of conservation of the State of Louisiana and praying that the case be remanded to the trial court for hearing on this plea.
He alleges that if Act No. 157 of 1940 and the orders of the Conservation Commissioner of February 6, 1942, and March 23, 1942, intended to change the law of prescription of the State of Louisiana and to change and determine the property rights of persons other than those having the right to explore lands for the recovery of minerals that said act and orders violate Section 15 of Article 4 of the Constitution of 1921 and Section 10 of Article 1 of the United States Constitution.
That appellant acquired the ten acres of land involved here from Claud Beene by deed, dated December 22, 1932. That the rights in and to this ten acres of land, as between Claud Beene and John B. Kennedy were fixed and determined by this deed. That respondent John B. Kennedy acquired vested property rights in and to this ten acres of land, of which he could not be deprived by a subsequent act of the Legislature nor by subsequent order of the Conservation Commissioner of Louisiana.
That the aforesaid act of the Legislature of Louisiana and the aforesaid orders of the Commissioner of Conservation made no provision for the payment to respondent-appellant of adequate compensation for the deprivation of his rights and that no such compensation has been paid.
For the reasons pointed out hereafter in this opinion, we are of the opinion that the constitutionality of the act and the orders complained of is not an issue. Further, appellant is claiming the fund deposited, and future benefits to accrue as results of the very orders he now seeks to attack as unconstitutional.
The motion to remand is denied.
The facts as taken from the pleadings are as follows:
On December 27, 1932, the defendant, Claud Beene, being the owner of the tract conveyed, conveyed to the defendant, John B. Kennedy, ten acres of land in the southwest corner of the E 1/2 of SE 1/4 of NW 1/4, bounded on the south by the forty line and on the north by Baucum Spur Highway leading to the Webster Parish Gravel Pit, Section 22, Township 23 N, Range 8 W, Claiborne Parish, Louisiana, reserving all of the oil, gas, and other minerals, together with the right of ingress and egress for the development thereof.
At the time of this conveyance the property conveyed together with other properties was covered by an oil, gas and mineral lease dated March 18th, 1919, now owned by the Ohio Oil Company and Gulf Refining Company, with the Ohio Oil Company being the operator thereof.
On Feb. 6, 1942, the Commissioner of Conservation of the State of Louisiana issued Order No. 35 providing special rules and regulations governing the exploration for and the production of oil and gas; the establishment of maximum drainage areas; the unitization of all separate property interests with the appropriate area of the drilling unit, and the method of allocating production from the Pettit Zone of the Haynesville Field, Claiborne Parish, Louisiana. This order was issued pursuant to Act No. 157 of the Louisiana Legislature of 1940, and the Haynesville Field is defined as including among other lands the E 1/2 of NW 1/4 of Section 22-23 N-8W within which the ten-acre tract in dispute is located. Among other provisions, the order directs that: "* * * in order to obtain a uniform spacing pattern, no well shall hereafter be drilled for the production of oil or gas from the Pettit Zone at any point more than one hundred feet from the center of the Southwest Quarter of each government quarter section," and that "as a practicable expedient of determining separate ownerships the forties on which the wells are located shall be pooled and unitized with the adjacent North or South forty, as the case may be, so that not more than one well shall be drilled on any North-South eighty-acre unit consisting of two governmental forty-acre tracts in the same quarter section, and the owners of separate property interests in each of said eighty *Page 506 
acres are hereby directed to pool and unitize the land, fee, royalty and leasehold interests contained in same for such pooling and consolidation, and the respective owners of separate property interests in each North-South eighty-acre unit shall participate in the benefits therefrom in the proportion that the acreage of each bears to said eighty acres; * * *." The Order No. 35 of February 6, 1942, further provides that "The portion of the production allocated to the owner of each separate property interest included in said eighty-acre unit formed by an integration order shall, when produced, be considered as if it had been produced from each separate property interest by a well drilled thereon."
On March 17, 1942, the Commissioner of Conservation of the State of Louisiana, issued Order No. 35 — 4. This order was issued pursuant to Act No. 157 of 1940 and in accordance with the provisions of Section II of Order No. 35 of February 6, 1942. This order No. 35 — 4 specifically integrated, pooled, unitized and consolidated into a North-South eighty-acre unit the E 1/2 of NW 1/4 of Section 22, Township 23 North, Range 8 West, Claiborne Parish, Louisiana.
Pursuant to Orders No. 35 and 35 — 4, on March 23, 1942, The Ohio Oil Company spudded or commenced operations for drilling a well on the Bond-Beene 80-acre Unit "P", comprising the E 1/2 of NW 1/4 of Section 22-23N-8W, Claiborne Parish, Louisiana. The well was completed on April 12, 1942, and has from that date to the time of filing suit been operated and has produced oil in commerical and paying quantities.
The sole question presented in this case is whether or not the prescription of 10 years liberandi causa running in favor of Kennedy has been interrupted by the drilling of the well, not on the ten acres of land owned by him, but on another part of the eighty acres included in the unit. The precise question presented by the facts in this case has not been passed upon by any appellate court of this state.
A somewhat similar situation was presented in the cases of Robinson v. Horton et al., and Robinson v. Schnitt, et al.,197 La. 919, 2 So.2d 647, 650, except that in these cases the owners of mineral interests comprising 355.33 acres executed an oil and gas lease in which the entire tract was unitized, and providing that the premises should be developed and operated as one lease and that all royalties accruing thereunder should be treated as an entirety and should be divided among and paid to the lessors in proportion to the mineral interest owned by each. The Supreme Court said in that case: "They have contracted; they are bound by their contract; and the question of whether the servitudes, owned by the defendants in these two cases at the time of the confection of the contract, were actually used by drilling is immaterial."
In Crichton et al. v. Lee et al., 209 La. 561, 25 So.2d 229, plaintiffs sought the cancellation of an oil and gas lease on an undivided one-half interest in forty acres of land which is included in the Cotton Valley unit in Webster Parish. Most of the owners of land in the Cotton Valley Unit had executed a conventional contract unitizing the field, but plaintiffs had not joined in the execution of the agreement. On account of the refusal of some of the mineral owners to sign the agreement, the Commissioner of Conservation issued Order No. 10 — C whereby certain sands in the Cotton Valley Field were unitized under authority of Act No. 157 of 1940. The Supreme Court held in that case that plaintiffs were not entitled to cancellation of the lease after the expiration of the five year primary term because of failure to drill a well on the particular forty acres, and also passed on the constitutionality of Act No. 157 of 1940 as it had previously done in the cases of Hunter Co., Inc., et al. v. McHugh, 202 La. 97, 11 So.2d 495; Alston v. Southern Production Co., Inc., et al., 207 La. 370,21 So.2d 383; Hood v. Southern Production Co., Inc., et al.,206 La. 642, 19 So.2d 336; and Hardy et al. v. Union Producing Co., et al., 207 La. 137, 20 So.2d 734. In all of the last cited cases, the unitization of leases was forced by the Commissioner of Conservation.
Section 9(a) of Act No. 157 of 1940 reads in part as follows: "* * * The *Page 507 
portion of the production allocated to the owner of each tract included in a drilling unit formed by a pooling order shall, when produced, be considered as if it had been produced from such tract by a well drilled thereon. * * *"
Article 789, R.C.C., providing a prescriptive period for servitudes reads as follows: "A right to servitude is extinguished by the nonusage of the same during ten years."
And Article 3546 is as follows: "The rights of usufruct, use and habitation and servitudes are lost by nonuse for ten years."
Counsel for defendant says in brief: "There can be no question of Kennedy's right to the fund in dispute, unless Act No. 157 of 1940 and the orders of the conservation commissioner, dated February 6, 1942, and March 23, 1942, changed the law of prescription in this state, changed the vested rights of the parties and determined their respective interest in and to the ten acres of land involved in this case. Appellee, Beene, contends that this act of the legislature and these orders had this effect. Appellant, Kennedy, takes the negative side of the question."
Appellant's demand to be paid the fund on deposit is inconsistent with his contention that no use has been made of the servitude.
In a supplemental brief appellant says that through oversight the original brief and the oral argument failed to mention appellant's complaint in paragraphs 6 and 8 of his answer, of want of notice to him of the hearings held, on which Orders 35 and 35 — 4 are based, and that he was the owner of the ten acres of land at the time, and interested in the development of the land for minerals, and that he has not acquiesced in nor consented to such orders.
Section 5(b) of Act 157 of 1940, Dart's Stat. § 4741.15, on the question of notice reads as follows: "No rules, regulation or order, including change, renewal or extension thereof, shall, in the absence of an emergency, be made by the Commissioner under the provisions of this Act except after a public hearing upon at least ten days' notice given in the manner and form as may be prescribed by the Commissioner. * * *"
Order No. 35, certified copy of which is annexed to the pleadings, has the following to say on the question of notice: "Pursuant to power delegated by Act No. 157 of the Louisiana Legislature for 1940, following publication of notice of hearing not less than ten days prior to said hearing in the Baton Rouge State Times, the official State Journal and a newspaper of general circulation published in East Baton Rouge Parish, and in the Haynesville News, a newspaper of general circulation published in Claiborne Parish, the Commissioner of Conservation held a hearing at New Orleans, Louisiana, on Wednesday, February 4, 1942, for the purpose of considering the adoption of special rules, regulations and orders governing the exploration for and the production of oil and gas; the establishment of maximum drainage areas; the unitization of all separate property interests within the drilling unit, and the method of allocating production from the Pettit Zone of the Haynesville Field, Claiborne Parish, Louisiana; and, * * *."
Order No. 35 — 4, certified copy of which is also annexed, has the following to say on the question of notice. "Pursuant to Act No. 157 of the Louisiana Legislature for 1940, and in accordance with the provisions of Section II of Order No. 35 issued by the Commissioner of Conservation on February 6, 1942, and following publication of notice of hearing according to law, the Commissioner of Conservation held a hearing at New Orleans, Louisiana, on Tuesday, March 17, 1942, regarding the issuance of an integration order pooling, unitizing and consolidating the separately owned property interests in the North-South eighty-acre unit described as the E 1/2 of NW 1/4, Sec. 22, Twp. 23 N., Rng. 8 W., Claiborne Parish, Louisiana, for the production of oil and gas from the Pettit Zone of the Haynesville Field, Claiborne Parish, Louisiana; * * *."
[1] Unless the record in this case shows (which it does not), that such notice as the commissioner says he gave is insufficient, then we take it that the notice given is good and sufficient. In addition, we think *Page 508 
that the objection as to actual notice has been answered in Placid Oil Co. v. North Central Texas Oil Co., Inc., et al.,206 La. 693, 19 So.2d 616.
Appellant further contends that when the sale was made by Beene, the ten acres was already under the lease originally given to Smitherman in 1919, and which is the same lease under which the present lessees are operating, and that Beene created a new servitude on the ten acres sold, and not having exercised the servitude within ten years Beene cannot now claim anything from this servitude. That Beene cannot now be heard to say to Kennedy that no well could be drilled on the ten acres, and that the sale was valid in part and void in part, and that Beene now owns the servitude in violation of the terms of the contract.
The answer to this argument is that appellant took title to the ten acres subject to the servitude being kept alive by its use, and if Beene in fact has used it through the drilling of the well on the eighty acre unit, appellant is no worse off than he would be if the well had actually been drilled on the ten acres.
If the servitude of Beene should be held to have been lost by nonuse, the only way Kennedy could get any benefit would be through the Pettit lime well on the eighty acres with which his ten acres is unitized. He could not drill a well on the ten acres to the Pettit lime, because of admitted valid orders of the Conservation Commissioner unitizing same, and he could not drill a well to any other depth because the Ohio Oil Co. and Gulf Refining Co. have a valid lease on it. But he accepted the title with at least constructive knowledge of the existence of this lease, because it was of record at the time. The only use he could make of the servitude is exactly the same use that Beene has made of it.
[2] As we view the case, the question is not whether this act and these orders change the law of prescription, but is whether or not the drilling of the well on the unit established by these orders is such a use of the servitude as had the effect of interrupting the running of prescription which would have otherwise accrued on the 28th day of December, 1942. At the time the well was completed in April, 1942, prescription had not run, and in view of the decisions of the Supreme Court in the cases we have cited, we are constrained to hold that the completion of the well and continuous production of oil, had the effect of interrupting the running of prescription.
Counsel for Beene has favored us with an interesting brief discussing the history of conservation measures and the development of conservation law in Louisiana as well as some of the cases cited in this opinion, but the holding of the Supreme Court in these cases is so well known that a lengthy discussion of them would serve no useful purpose here.
[3] We hold with counsel for Kennedy that Act No. 157 of 1940 has not repealed the Articles of the Civil Code cited above with respect to prescription, but we do hold that the servitude in this case was used before the expiration of ten years.
We have examined the case of Union Sulphur Co. v. Lognion, La. App., 26 So.2d 845, but the facts of that case appear not to be applicable to the facts in this case for the reason that a servitude had not been transferred to defendants, Weber and Weisse, but only a royalty interest to be paid to them out of a servitude that Mrs. Roy had retained, and which servitude had been lost for nonuse by the prescription of ten years.
For the reasons assigned, the judgment appealed from is affirmed. *Page 509