**HUMBLE OIL & REFINING CO. et al. v. SOUTHLAND ROYALTY CO. et al.**

No. 4794.

Court of Civil Appeals of Texas. El Paso.

July 18, 1951.

Rehearing Denied Aug. 1, 1951.

Jones, Hardie, Grambling & Howell, El Paso, Felix A. Raymer, Houston, G. R. Pate, Fort Worth, for appellants.

Ben G. Smith, R. M. Coleman, both of Fort Worth, A. W. Walker, Jr., Dallas, for appellees.

McGILL, Justice.

By this suit appellees sought a declaratory judgment under Article 2524–1, Vernon's Ann.Civ.St., to settle and determine a controversy which had arisen between them and appellants as to their claim to a royalty interest in certain minerals produced from a portion of Section 6 in Block "A", B. S. & F. Survey in Crockett County. They also sought an accounting and judgment against appellant, Humble Oil & Refining Company, the purchaser of the oil produced from such land. Trial to the court without a jury resulted in a judgment in favor of appellees for all relief sought, the monetary judgment against Humble being in the sum of $14,072.89. The trial court incorporated Findings of Fact and Conclusions of Law in the judgment. The parties concede that the facts are not disputed, and that the sole questions for our determination are questions of law. Appellants have made a very clear statement of the facts, which is fully supported by the trial court's findings. A statement of these facts is deemed essential to a proper understanding of the points of law presented. We copy copiously from appellants' brief:

"L. P. Powell and wife, Essie D. Powell, on April 2, 1925, and prior thereto, were the owners of Section 6 in Block 'A' B &SF Survey in Crockett County, Texas. Section 6 was in the form of a square and contained 640 acres of land. L. P. Powell and wife are the common source of title.

"On April 2, 1925, Powell and wife conveyed to J. H. Youngmeyer an undivided one-half (½) interest in all oil, gas and other minerals in the South one-half (½) of this Section 6. On this date, as a result of such conveyance, the title to Section 6 was vested as follows: L. P. Powell and wife owned the surface to the whole section, all the minerals in the North one-half (½) and one-half (½) of the mineral estate in the South one-half (½); while J. H. Youngmeyer owned one-half (½) of the minerals in the South one-half (½).

"On August 13, 1925, Powell and wife conveyed to Southland Royalty Company, among other lands, an undivided one-half (½) interest in the oil, gas and other minerals in the Northwest quarter (NW¼) and in the Northeast quarter (NE¼) of the Southwest quarter (SW¼) of the same Section 6. There was a limitation on the grant, in that it was to remain in force and effect only for 'a period of twenty years from date' (August 13, 1925) and as long thereafter 'as oil, gas or other minerals are produced from said land'.

"The J. H. Youngmeyer interest was in part conveyed by subsequent deeds, and, to such extent there was a mutation in such title. The mutation in the Youngmeyer title is immaterial to this appeal, and, in the interest of brevity we do not chain it, but will continue reference to it, where pertinent, as the Youngmeyer interest.

"Thereafter, and by instrument dated June 22, 1932, filed for record November 3, 1932, L. P. Powell and wife, Essie D. Powell, the owners of the Youngmeyer interest and Southland Royalty Company made an oil, gas and general mining and mineral lease to Gulf Production Company, covering 250 acres of land out of Section 6. This 250 acres was described as follows: 'The north 50 acres (N.50) of the West ½ of the Southwest ¼; the Northeast ¼ of the Southwest ¼; and the N.W.¼ of Sec-

tion 6, Block "A" B. S. & F. Survey, aggregating 250 acres, more or less.'

"The conditions which then existed upon the land subject to this litigation can best be presented by the following plat:

"The Gulf Production Company thereafter assigned the entire lease, to a depth of 3,000 feet, to Garrett M. Smith, one of the defendants in the trial court.

 Portion of Section 6 Covered by Southland's Mineral Deed

 Portion of Section 6 Covered by Oil & Gas Lease

○ Location of Wells Drilled Prior to August 13, 1945.

"The mineral interests in the land subject to the oil and gas lease (enclosed by the broken line) were owned as follows:
Powells:
½ interest in NW/4
½ interest in N 50 acres of W/2 SW/4
No interest in NE/4 SW/4
Southland Royalty Company:
½ interest in NW/4
½ interest in NE/4 SW/4
(subject to the 20 year limitation)
No interest in N 50 acres of W/2 SW/4
Youngmeyer:
No interest in NW/4
½ interest in N 50 acres of W/2 SW/4
½ interest in NE/4 SW/4

"By deed dated October 17, 1932, filed for record October 24, 1932, L. P. Powell and wife conveyed to Humble Oil & Refining Company all the oil, gas and other minerals in Section 6, Block "A". This deed specifically passed all 'reversionary' rights of which Powell and wife were possessed at that time, * * *

"Garrett M. Smith, pursuant the assignment to him by Gulf Production Company of the leasehold rights to a depth of 3,000 feet, commenced drilling operations on the North 50 acres of the West one-half (½) of the Southwest quarter (SW¼), and, on June 19, 1941 completed a producing oil well. On September 24 of the same year

he completed another producer on the same 50-acre tract. Oil has been continuously produced from said two wells, in paying quantities, from the date of completion to the time of trial. The location of the wells is shown on the plat.

"No well was drilled on the lands described in the mineral conveyance from Powell and wife to Southland Royalty Company, dated August 13, 1925, within the 20-year period provided in that deed as being the term limit of the grant; and, of course, there was no production from this land at the end of the 20-year term.

"After oil had been produced from said wells from June 19, 1941, Southland Royalty Company, on January 30, 1945, for the first time made known to Humble Oil & Refining Company that it was claiming an interest in such oil under the lease of June 22, 1932, and, for the first time made demand for payment. This demand was predicated upon the claim that the lease was a 'unitized' lease under the holdings made in French v. George, [Tex.Civ.App.] 159 S. W.2d 566, and in Parker v. Parker, [Tex. Civ.App.] 144 S.W.2d 303.

"Humble was then (and still is) purchasing the oil from the leased premises, and it was willing to recognize the Southland demand to the extent of treating the lease as a unitized lease—but no production having been obtained on the land in which Southland owned a mineral interest, within the 20-year term, it was unwilling to recognize any ownership or rights in Southland subsequent to August 13, 1945 (20 years from August 13, 1925).

"Southland, contending that its rights continued so long as there was production under the Gulf lease, required a Division Order which would, by its terms, give it the right to prosecute its claim. This was done, Southland, Humble and Continental reserving their respective rights to litigate all issues between them.

"On this Division order, Humble paid Southland and Sneed, respectively, their accumulated royalty from date of first production to August 13, 1945. Humble has made no further payments to either Southland or Sneed.

"Continental Oil Company's interest in the litigation arises by virtue of its purchase, from Humble, of a one-half ($\frac{1}{2}$) interest in the estate passing to Humble as a result of L. P. Powell's deed to Humble dated October 17, 1932.

"Earl Sneed is involved by virtue of a purchase from Southland Royalty Company of a small interest in the estate conveyed to it by L. P. Powell's deed of August 13, 1925, which interest vested in Sneed by mesne conveyances."

The controversy is over the construction of the mineral deed from the Powells to Southland of August 13, 1925, in connection with the lease by the Powells to Southland and others of June 22, 1932. Appellants contend that inasmuch as no minerals were produced by August 13, 1945 from any well located on that part of the leased premises covered by the mineral deed, all of Southland's rights under that deed terminated and the minerals thereby conveyed reverted to the Powells and were acquired by Humble under the Powells deed to it of October 24, 1932. Appellees contend, and the trial court in effect so held, that the lease being a "unitized" lease the production of oil on any part of it was in law production on the 200 acres covered by the mineral deed, and the twenty year limitation therein contained was therefore not effective. The controversy is therefore centered around the trial court's conclusion of law No. 5, which is as follows: "5. That under said deed and lease, insofar as said lease covers the land covered by said Deed, said grant was and is for a term of twenty (20) years from the date thereof, namely, August 13, 1925, and as long after the expiration of said 20-year period as oil, gas or any other mineral is produced under said lease, irrespective of the location of production thereunder."

Both parties concede that the question presented is one of first impression in this State. We have been favored with excellent briefs in which the respective contentions are ably set forth with exhaustive citation of authorities.

Appellants do not complain of the trial court's conclusion of law that the lease of June 22, 1932, is what is known as a "unit-

ized" lease, and that the several lessors were for the full 20-year term of the mineral deed of August 13, 1925, entitled to participate in the royalty produced under the lease. Their complaint is of the court's conclusion that the lease operated as an extension of the 20-year term specified in the mineral deed and modified that deed so as. to comply with the condition of the grant to Southland and extend the term of the grant so long as oil, gas or other minerals should be produced from the 50-acre tract in which appellee owns no title or claim.

■■■■ The doctrine of a unitized lease is epitomized in French v. George, Tex.Civ. App., 159 S.W.2d 566, loc.cit. 569(1, 2) Civ. App. writ refused. We quote: "It seems to be established as a general rule of law that where several owners of adjoining tracts of land unite in a single lease to a third party for development of oil or gas as a single tract, and provision is made for delivery of the royalty to the lessors, in the absence of an agreement to the contrary, the royalties must be divided among the lessors in the proportion that the area of the tract owned by each bears to the total area covered by the lease, and the ownership of the tract upon which a well may be drilled and from which oil may be produced is a matter of no consequence."

The doctrine is an equitable doctrine. Its underlying theory is that the lessors having agreed that oil, which is migratory in its nature, may be produced from any portion of the total area leased without regard to the ownership of various lessors, and without the necessity of offset wells to protect their respective interests, see Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43, Com. App. opinion adopted and there being no expressed intention as to the portion of the total royalty each lessor should have, equity will imply an intention of the lessors that such royalty should be pro-rated in such proportion as the area owned by each lessor bears to the total area leased, in order to prevent the hardship which would otherwise result to one whose land would be drained by production either "accidentally or arbitrarily" on portions of the leased area which do not embrace his particular

tract. See Parker v. Parker, Tex.Civ.App. 144 S.W.2d 303, writ refused, and authorities there cited.

■■■■ Appellees' position may be most strongly stated as follows: Each of the parties to the unit lease was charged with the legal consequences thereof, one of which was each would take royalty in the ratio or proportion which his interest bore to the whole, wherever the production was had on the lease. This could not be so except that the production, wherever had, be regarded as production from the whole. It was not practical nor feasible for Powell and Southland each owning the less (one-half each) working interest, to make a lease, except to pool it and make a unit lease, as was done here. The 250 acres was a comparatively small area, measured by the standards of the locality, and oil underlying any portion of it might well be regarded as under all of it. Powells having put their half interest in the 200-acre tract into the unit lease, together with Southland, the owner of the other half, impliedly agreed under the law applicable to a unit lease that production on any part of the unit would be regarded as production from the 200-acre tract and the life of Southland's estate continued under its terms so long as the oil is produced from the unit, which likewise fixes the duration of the unit lease. In any unit lease the law imputes to each party thereto and to them all collectively the understanding or agreement that production from any part is production from the whole. However, we think that the doctrine of a unitized lease should not be extended so as to apply to the situation presented here. The limited estate granted to Southland by the mineral deed is fully protected by the unitized lease. Under its terms Southland gets its just share of that which was conveyed to it by the mineral deed. No injustice or hardship is manifest because it gets no more than that. If its mineral interest could not be developed from a practical standpoint without joinder by the Powells, this fact was known to it when the mineral deed was executed, and the Powells were under the same handicap. Of course, courts can not make contracts

for parties, and when their agreements have been reduced to writing such writing is presumed to embrace the entire contract. The rule is clearly stated in Danciger Oil & Refining Co. of Texas v. Powell, 137 Tex. 484, 154 S.W.2d 632, loc. cit. 635 (1, 4), 137 A.L.R. 408: "In the outset it should be noted that when parties reduce their agreements to writing, the written instrument is presumed to embody their entire contract, and the court should not read into the instrument additional provisions unless this be necessary in order to effectuate the intention of the parties as disclosed by the contract as a whole. An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so, or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole. 21 C.J.S., Covenants, § 9, p. 888; 13 C.J. 558; 17 C.J.S., Contracts, § 328; 15 C.J. 1214; 21 C.J.S., Covenants, § 14; 14 Amer. Jur. 490; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890; Grass v. Big Creek Development Co., 75 W.Va. 719, 84 S.E. 750, L.R.A.1915E, 1057." See also Palm v. Mortgage Inv. Co., Tex.Civ.App., 229 S.W.2d 869, (wr. ref. n. r. e.)

What is said in the above quotation relative to implied covenants is, we think, equally applicable to implied agreements. We find nothing in the lease of June 22, 1932, which indicates any intention to extend or modify the limited estate granted to Southland by the mineral deed of August 13, 1925. To our minds the language of paragraph 3 of Section 2 of the lease, i. e., "All money royalties may be paid to lessor as provided in Paragraph 3 of Section 1 hereof. Should the interest owned by lessor in said land prove to be less than the whole, the royalties and rentals to be paid hereunder shall be paid to the lessor in proportion only that lessor's interest is to the entire interest or whole." indicates a contrary intention. At least this language is susceptible of an interpretation that the parties recognized that the individual lessors were the owners of less than the whole interest in their respective areas included in the lease rather than the whole interest in their respective areas covered thereby, and contemplated that there would be no change in such ownership. However, we do not attach much importance to this language, because this would be so even though appellees' contention should be sustained. That the Powells so interpreted the lease is attested by their conveyance to Humble on October 17, 1932 of their reversionary rights in the minerals, within a comparatively short time after they executed the lease. Appellees lean heavily upon Ohio Oil Co. v. Kennedy et al., La.App., 28 So.2d 504 and Peerless Oil & Gas Co. v. Tipkin, 190 Okl. 396, 124 P.2d 418. We think these authorities, apart from being from foreign jurisdictions, are not at all controlling. In the Louisiana case the statute and order of the Conservation Commissioner expressly provided that production allocated to each separate property interest in the unit which was created by law and not by contract, when produced should be considered as if it had been produced from each separate property interest by a well drilled thereon. Had such provision been incorporated in the lease here involved there could be little question but that the parties would have thereby evidenced their intention that such production should satisfy the conditions of the mineral deed. The decision in the Oklahoma case merely held that the trial court erred in sustaining a demurrer to plaintiff's petition. Obviously this was so if plaintiff was entitled to recover their portion of the royalty interest for the term of their deed which is admitted here.

. It follows that the judgment of the trial court should be reversed and judgment here rendered for appellants, that appellees take nothing. It is so ordered.

Reversed and rendered.

SUTTON, Justice (dissenting).

I am unable to agree with the disposition of this case. It is my opinion the judgment of the trial court should be affirmed. The views expressed in the paragraph on pages 7 and 8 of the majority opinion stating the position of appellees most strongly are the views noted by me on the oral arguments. The doctrine applied in unitized lease cases is based and grounded on the proposition production from any part of the lease will be regarded and is regarded as production from the whole of the lease. The question here, it seems to me, is not whether or not the unit lease enlarges the grant in Southland's mineral deed, but is, Is the production from the wells located on the unit lease production from the 200-acre Southland-Powell tract? It occurs to me that if there be any logic or reason in the unitized lease doctine (and of course there is) then the affirmative answer follows as a matter of course. Powell and Southland knew, as all know, when the one-half mineral estate was conveyed to Southland it was not practical to explore and produce the 200 acre except through a pooling of it. If Southland developed and produced it it would have to account to Powell for his one-half interest. When they each pooled their interest with the other 50-acre tract, upon which the producing wells are located, they did so with the knowledge and understanding under the law each owner would receive royalty in the proportion his interest bore to the whole. Had the wells been on the 200-acre tract beyond any question Southland's estate would have been extended for the life of the production, but it would have received just exactly what it did receive. The only reason Southland ever received anything was because the production was regarded by law as production from its 200-acre interest.

I regard the rule applied in the Louisiana and Oklahoma cases cited in the majority opinion applicable here. The consequences are the same whether the pooling be voluntarily made or made under conservation rule or law. The purpose of the pooling is exactly the same—to secure the development and production of small areas and interests in the most practical and economical way open to the parties. It is a matter of common knowledge lessees universally require the conveyance of the seven-eighths working interest before exploration and production can be secured.

The unit lease had nothing to do with an extension or enlargement of the original Southland grant. It got an estate for twenty years and so long thereafter as oil, gas or other minerals are produced from the lands. The production under the unit lease simply continues the grant under its terms after the expiration of the twenty year period. When the unit lease was entered into, Southland, Powell, and the owners of the 50-acre tract and their successors in interest were joint owners of the royalty under the 250 acres embraced in the unit lease. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, loc. cit. 476 (T); Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43, loc. cit. 46(4, 5).

On Appellee's Motion for Rehearing

McGILL, Justice.

That portion of the majority opinion beginning with the paragraph in the middle of page 7 thereof [244 S.W.2d 253] "Appellee's position may be most strongly stated", etc., to the word "whole" in the third line of page 8 thereof was inserted for the purpose of stating the views of Associate Justice SUTTON. At that time Justice SUTTON had not prepared his dissenting opinion. Since appellees have objected to this portion of the majority opinion and Justice SUTTON has expressed his views more accurately in his dissenting opinion, the portion of the majority opinion above referred to and the word "however" immediately following are withdrawn.

Appellee's motion for a rehearing is overruled.