TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00257-CV







Union Pacific Resources Company, Appellant



v.



Hellen Reasoner Hutchison, Milburn E. Nutt and Susan McRae, Appellees








FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 94V-165, HONORABLE DAN R. BECK, JUDGE PRESIDING








 Union Pacific Resources Company appeals from a judgment recovered by appellees 
Hellen Reasoner Hutchison, Milburn E. Nutt, and Susan McRae (1) after a non-jury trial based on
a set of agreed issues and stipulated facts. We will reverse in part the trial-court judgment and
render judgment as set out below, affirming that part of the judgment not reversed.


THE CONTROVERSY


 In an "Oil, Gas, and Mineral Lease" dated June 24, 1976, William Kirk Morgan
and others leased to Hutchison a tract of land in Fayette County comprising an estimated 692
acres. The lessors reserved no executive rights and vested in Hutchison, as lessee, an express
right to pool or combine the land covered by the lease or any portion thereof, as to oil and gas,
with other lands and leases when in Hutchison's judgment it was necessary or advisable to do so
in order properly to develop and operate the leased premises. Morgan reserved in the lease a non-participating royalty.

 In an instrument dated June 25, 1976, Hutchison assigned to Rex Fuller, "his heirs,
successors and assigns . . . all right, title and interest in and to the" Morgan Lease, "together with
the rights incident thereto." Hutchison reserved in the assignment an undivided three-percent
overriding royalty; Fuller assumed and agreed to perform the terms, covenants, and conditions
imposed upon Hutchison in the Morgan Lease. Nothing in the assignment purports to reserve in
Hutchison any executive rights and nothing purports expressly to prohibit pooling of the mineral
estate without Hutchison's consent.

 The Morgan Lease expired at the end of its primary term, save for a sixty-five-acre
tract that had been pooled into an eighty-acre unit upon which a vertical well (the Linda Ann
Morgan Unit No. 1 Well) had been completed.

 Having acquired in 1992 all of Fuller's interest in the Morgan Lease, Union Pacific
dissolved the eighty-acre unit and pooled the sixty-five-acre tract from the Morgan Lease with
other tracts outside that lease to form a 336.052-acre pooled unit known as the Knebel Cer-Mor-Leb Unit No. 1. Production from the Knebel unit was obtained by means of a horizontal well
having two "drainholes," one approximately 1,851 feet in length and the other approximately
3,559 feet in length. The former did not cross the sixty-five-acre tract; the latter traversed a
corner of that tract for a distance of about 300 feet. Production from the Knebel unit ceased in
1993.

 Hutchison's consent was not obtained before either pooling action mentioned above. 
Alleging that Union Pacific's pooling into the Knebel unit was wrongful without her consent,
Hutchison sued Union Pacific in the present cause for a declaratory judgment to that effect, 
together with actions for an accounting and for damages based upon fraud, breach of contract, and
conversion. Union Pacific counterclaimed for a declaratory judgment that Hutchison's consent
to the pooling was not required and that her interest was therefore equal to three percent of 65/336
of 8/8ths of production from the Knebel unit.

 Based on the parties' stipulated facts and a statement of agreed issues, the trial court
determined in its final judgment that Union Pacific did not possess the right, at its election
("option"), to pool Hutchison's three-percent overriding royalty interest without her consent. The 
court ordered, in addition, that she recover from Union Pacific $76,000 in damages, representing
three percent of the value of all production from the entire Knebel unit.

 In its appeal, Union Pacific raises two issues: the first is whether the trial court
erred in holding that Hutchison's consent was required before the sixty-five-acre tract was pooled
into the Knebel unit; the second issue is whether Hutchison was entitled to three percent of all
production from the entire Knebel unit, assuming her consent to pooling was required. Under the
parties' trial-court agreement, we need not determine the second issue and may render judgment
if the trial court erred with respect to the first issue.


DISCUSSION AND HOLDING


 The parties join issue on whether Hutchison's express consent to the pooling of the
sixty-five-acre tract, into the Knebel unit, was required before the pooling was effective against
the overriding royalty she reserved in her assignment to Fuller. Hutchison's overriding royalty,
reserved in that assignment, is an interest in land. She argues her consent was therefore required
under the cross-conveyances principle. That principle holds that a pooling of royalties and
minerals under different tracts of land effects cross-conveyances among the owners of minerals
under the several tracts pooled, so that they all own undivided interests under the pooled unit in
the proportion their contribution of acreage bears to the acreage of the entire unit. A royalty
owner's consent to the pooling is therefore required because only an owner may convey his
interest in land. See Montgomery v. Rittersbacher, 424 S.W.2d 210, 213 (Tex. 1968); Minchen
v. Fields, 345 S.W.2d 282, 285 (Tex. 1961); Brown v. Smith, 174 S.W.2d 43, 46 (Tex. 1943);
Veal v. Thomason, 109 S.W.2d 472, 475-76 (Tex. 1942); Raymond M. Myers, Stare Decisis and
the Pooling of Nonexecutive Interests in Oil and Gas: A Reply, 47 Tex. L. Rev. 1379, 1379-89
(1969); Lee Jones, Jr., Non-Participating Royalty, 26 Tex. L. Rev. 569, 596-98 (1948).

 If Hutchison's assignment to Fuller authorized him, his heirs, successors and
assigns, to pool the sixty-five-acre tract, then no additional consent on Hutchison's part was
required of Fuller's successors in interest. Whether that was the effect of her assignment depends
upon the intention of the parties as reflected in the whole of the instruments involved (the Morgan
Lease and the assignment), considered in light of the subject matter and surrounding
circumstances. See Jones v. Killingsworth, 403 S.W.2d 325, 328 (Tex. 1966); Veal, 159 S.W.2d
at 476. In that connection, one must bear in mind that Hutchison's very act of reserving an
overriding royalty "negatives the existence of an intention to confer upon [Fuller] the power or
authority to" pool, with its resulting diminution of her royalty interest. Brown, 174 S.W.2d at
46. Moreover, the fact that Fuller and his assigns and successors were given "mere executive
rights" is insufficient in and of itself to constitute an authority to pool. (2) See Montgomery, 424
S.W.2d at 213; Minchen, 345 S.W.2d at 282; Brown, 174 S.W.2d at 46.

 Against the foregoing precepts, one must weigh other factors in arriving at the
parties' intention. The Morgan Lease expressly authorized Hutchison to pool the land covered by
the lease, or any part thereof, and to assign all her right, title, and interest in the lease, together
with rights incident thereto. In an assignment dated one day after the lease, Hutchison assigned
the leasehold in its entirety to Fuller, except for her overriding royalty, vesting in Fuller by her
own act all executive rights. The legal effect of her unqualified assignment was to vest in Fuller,
his heirs, successors and assigns, the identical rights, privileges, and benefits Hutchison possessed
under the Morgan Lease, which included an express power to pool. See Cassity v. Smith, 193
S.W.2d 991, 993 (Tex. Civ. App.--Texarkana 1946, writ ref'd) (right of lessee to notice, given
in lease, passed with his assignment of leasehold to assignee); Mann v. Rio Bravo Oil Co., 107
S.W.2d 653, 658 (Tex. Civ. App.--Beaumont 1937, writ ref'd) (lessee's assignment, reserving
overriding royalty, transferred to assignee all of leasehold acreage when disputed small tract not
expressly excluded); Greenwood & Tyrell v. Helm, 264 S.W. 221, 223 (Tex. Civ. App.--San
Antonio 1924, writ ref'd) (where lessee held under lease mere option to drill, with no obligation
to do so, and lessee's assignment imposed no express obligation to drill, assignee received
identical option to drill unencumbered by obligation to do so).

 We conclude the parties intended that Fuller should receive by Hutchison's
assignment the right to pool given Hutchison in the Morgan Lease in express terms. She did more
than reserve an overriding royalty and Fuller acquired more than "mere executive rights." She
transferred to Fuller the identical right to pool she had under the Morgan Lease, and he acquired
that specific right as a matter of law because it was among the rights included in the all-inclusive
description contained in her assignment, namely "all right, title and interest in and to the [Morgan
Lease] together with the rights incident thereto or used or obtained in connection therewith." (3)

 It is doubtful that the parties intended that Fuller should have the right to pool the
Morgan interests but not the right to pool Hutchison's interest. The record suggests no
developmental or other purpose in that arrangement. Yet that is the substance of Hutchison's
contention, which we reject.

 We hold Hutchison transferred to Fuller, in her assignment, her express authority
to pool the sixty-five-acre tract. Consequently, no further consent on her part was required before
Union Pacific pooled the sixty-five acres into the Knebel unit.

 Consistent with the parties' agreed issues and stipulated facts, we order as follows:

 We reverse the trial-court judgment insofar as it declares that Hutchison's
assignment to Fuller did not vest in him, his heirs, successors, and assigns, a power to pool the
sixty-five-acre tract and the three-percent royalty reserved by Hutchison in her assignment. We
render judgment that Union Pacific possessed the power to pool the sixty-five-acre tract as Fuller's
successor-in-interest.

 We render judgment that Hutchison, Nutt, and McRae are collectively entitled to
an overriding royalty in production from the Knebel unit equal to three percent of 65/336.052 of
8/8ths of said production.

 We reverse the trial-court judgment insofar as it awards Hutchison, Nutt, and
McRae damages in the amount of $76,000, and render judgment that they take nothing by their
causes of action against Union Pacific.

 We affirm the trial-court judgment insofar as it denies Union Pacific, Hutchison,
Nutt, and McRae their claims for attorneys' fees, interest, and costs of court.

 We award Union Pacific appellate costs.



 

 John E. Powers, Justice

Before Justices Kidd, Yeakel and Powers*

Affirmed in Part; Reversed and Rendered in Part

Filed: March 11, 1999

Do Not Publish Released for publication May 20, 1999. Tex. R. App. P. 47.3(c).
















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. For convenience, we shall refer collectively to the appellees as "Hutchison" save where
necessary to name them individually.
2. Narrowly considered, an "executive right" is simply another name for an exclusive
power to execute an oil and gas lease, from which the lessor will not derive all the usual lease
benefits, namely bonus, rental, and royalty. If the lessor retains only a royalty, an interest subject
to the power to lease is called a non-participating royalty, indicating that the royalty owner does
not share in bonus or rental, nor in the right to execute leases or to explore or develop. In a broad
sense, "executive right" may also refer to any managerial power over the lease or the mineral
estate, including power over exploration and development. See 8 Martin and Kramer, Williams
& Meyers Oil and Gas Law, "Exclusive leasing power," "Executive right," "Non executive
mineral interest," "Nonparticipating royalty." (1998).
3. In reference to the precise issue here involved, it has been stated summarily that


[n]o particular problem would be presented by the grant or reservation of a
non-participating royalty interest subsequent to, and, therefore, subject to, a
prior outstanding lease containing--a pooling provision, provided the royalty
grant or reservation covered the entire leased premises.


Lee Jones, Jr., Non-Participating Royalty, 26 Tex. L. Rev. 569, 598 (1948). The Morgan Lease
reserved a royalty that covered the entire 692-acre tract leased to Hutchison, and Hutchison's
assignment to Fuller was expressly made subject to the Morgan Lease.



s required before
Union Pacific pooled the sixty-five acres into the Knebel unit.

 Consistent with the parties' agreed issues and stipulated facts, we order as follows:

 We reverse the trial-court judgment insofar as it declares that Hutchison's
assignment to Fuller did not vest in him, his heirs, successors, and assigns, a power to pool the
sixty-five-acre tract and the three-percent royalty reserved by Hutchison in her assignment. We
render judgment that Union Pacific possessed the power to pool the sixty-five-acre tract as Fuller's
successor-in-interest.

 We render judgment that Hutchison, Nutt, and McRae are collectively entitled to
an overriding royalty in production from the Knebel unit equal to three percent of 65/336.052 of
8/8ths of said production.

 We reverse the trial-court judgment insofar as it awards Hutchison, Nutt, and
McRae damages in the amount of $76,000, and render judgment that they take nothing by their
causes of action against Union Pacific.

 We affirm the trial-court judgment insofar as it denies Union Pacific, Hutchison,
Nutt, and McRae their claims for attorneys' fees, interest, and costs of court.

 We award Union Pacific appellate costs.



 

 John E. Powers, Justice

Before Justices Kidd, Yeakel and Powers*

Affirmed in Part; Reversed and Rendered in Part

Filed: March 11, 1999

Do Not Publish Released for publication May 20, 1999. Tex. R. App. P. 47.3(c).
















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, s