## EMPIRE INS. CO. OF TEXAS v. COOPER.

### No. 5112.

Court of Civil Appeals of Texas. Amarillo.

Feb. 5, 1940.

Rehearing Denied March 11, 1940.

Hutchison & Fisher, of Paris, for appellant.

McClintock & Robertson, of Childress, for appellee.

JACKSON, Chief Justice.

On August 25, 1933, the Empire Insurance Company of Texas, a corporation duly and legally organized under and by virtue of the laws of this State, with its principal place of business at Paris, Texas, issued to Sarah E. Cooper an insurance policy by the terms of which it agreed for certain annual premiums and upon stipulated contingencies to pay to the insured during her life certain indemnity or bene-

fits and after her death to pay all indemnity and benefits thereunder to her husband, Dr. M. A. Cooper, if he survived her.

Mrs. Sarah E. Cooper became permanently and wholly disabled about September 10, 1938, and died on October 10th thereafter.

On December 14, 1938, Dr. M. A. Cooper, the appellee herein, instituted this suit in the District Court of Childress County against the appellant, the Empire Insurance Company of Texas, alleging that the policy was an unlimited life insurance policy and insured the deceased against death in the sum of $1,000 from any and all causes and that Mrs. Cooper having died the amount was due and payable to her husband, Dr. M. A. Cooper, the beneficiary after her death in the policy.

The appellant filed its answer and asserted that it is a private corporation duly incorporated under Chapter 6, Title 78, article 4784 et seq., of the Revised Civil Statutes of 1925. It pleaded that on August 25, 1933, it issued to Mrs. Sarah E. Cooper, in accordance with the provisions of Chapter 6, Title 78, the health and accident insurance policy involved in this litigation but contends that under the provisions thereof it was liable to appellee for the sum of $300 only, which amount it tendered to him on receipt of proof of the death of the insured and also tendered said sum at the trial into the registry of the court for appellee's benefit.

The case was submitted to the court without the intervention of a jury and judgment rendered that appellee have and recover of and from appellant the sum of $1,000 with interest thereon at the rate of 6% per annum from October 15, 1938, together with costs, and this judgment is before us for review.

The appellant by proper assignments assails the judgment of the trial court and contends that he committed reversible error in holding that the contract was an unlimited life insurance policy insuring the deceased against death in the sum of $1,000 from any and all causes because he claims the policy did not insure the deceased against death unless death resulted directly through external, violent and accidental means in one and the same accident, within ninety days after the date of such accident.

The appellee's counter propositions are, first, that the court correctly construed the contract as an unlimited life insurance policy which insured deceased against death from any and all causes; second, that there is nothing in the contract nor in the record to show that any information was ever furnished either to the deceased or her husband advising them that the appellant was organized and doing business under Chapter 6, Title 78 of the Revised Civil Statutes of 1925 and therefore the company is estopped to deny that the policy was and is an unlimited life insurance policy.

The record discloses that the parties agreed that all premiums had been paid; that the policy was in full force and effect; that Mrs. Cooper died about the 10th of October, 1938; that appellant is the beneficiary in the policy and entitled to recover the benefits payable thereunder; that proof of death and disability was made and that the insured suffered total disability and died as the result of the disease known as chronic cholecystitis, intractable vomiting and inanition; that the appellant had tendered to appellee $300 when proof of the death of insured was made and had tendered to him that amount in satisfaction of the claim and paid the same into the registry of the court; that the Empire Insurance Company is incorporated under Chapter 6, Title 78, Revised Civil Statutes of the State of Texas, 1925; that the negotiations between the insurer and the insured were conducted through the appellant as the agent of his wife, Mrs. Sarah E. Cooper.

Chapter 6, Title 78, authorizes not less than five persons to organize a corporation for transacting the business of accident insurance upon the mutual assessment plan and also provides that such a corporation may insure against disability resulting from sickness or disease. It gives in detail the procedure for incorporation, how the business shall be conducted, permits the creation of a reserve fund, and article 4788 of said chapter is as follows: "Any corporation which issues any certificate, policy or other evidence of interest to its members, whereby, upon his death or total disability, any money is to be paid by such corporation to such member, or beneficiary designated by him, which money is derived from voluntary contributions or from admission fees, dues and assessments, or any of them, collected, or to be collected, from the members thereof, and interest and accretions upon, and wherein the paying of such money is conditioned upon the

same being realized in the manner aforesaid, and wherein the money so realized is applied to the uses and purposes of said corporation and the expense of the management and prosecution of its business, and which has no subordinate lodges or similar bodies, shall be held to be engaged in the business of mutual assessment accident insurance as contemplated by this chapter, and shall be subject only to the provisions of this chapter."

The appellee depends on certain provisions of the policy which he urges in his brief to support his contention that the policy insured deceased against death from any and all causes, and the provisions so urged with all others we will consider.

On the back of the policy are the following words:

."Whole Life Level Premium Policy * * * Empire Insurance Company of Texas Home Office: Paris, Texas.

"In the event of death or disability, notice should be given at once to the Company. It is not necessary to employ any person to collect any benefit provided in this policy. Time and expense will be saved by writing direct to the Company."

On the first page of the policy is this language:

"A Reserve Insurance Company * * * (Incorporated Under the Laws of Texas) * * * Level Premium Policy

"In consideration of the statements and agreements contained in the application for insurance, which is made a part of this policy, and of the payment of (Issued· in lieu of· policy #2988), in advance, and the further payment of $19.25 on or before the 1st day of September in every year thereafter during the lifetime of· the insured:

"The Empire Insurance Company of Texas (hereinafter called the Company) hereby insured Mrs. Sarah E. Cooper in the manner and to the extent hereinafter provided, in the maximum sum of One Thousand Dollars."

Printed in red ink on the face of the policy is this language: " * * * The payment of the benefits herein provided for is conditioned upon its being collected by this Company from assessments and other sources, as provided by its by-laws. The premium herein stated shall not be increased or raised in any manner, but shall remain as stated."

The policy also contains a table of values and surrender options; provides that if the age of insured has been misstated that the amount payable shall be the amount the premium paid would have purchased if the correct age had been given; that if the insured commits suicide within a year the Company shall only be liable for the amount of the premiums paid; that the policy with the application constitutes the entire contract, and section 12 is as follows: "12. Benefits. This policy insures against death·; or the loss of both entire hands or both entire feet, or one entire hand and one entire foot, or the irreparable loss of the entire vision of both eyes, resulting from bodily injuries effected directly, exclusively and independently of all other causes, through external, violent and accidental means, by one and the same accident, within ninety days from the date of the accident, for the maximum amount stated in the front page of this policy; against total and permanent disability from accident or disease, so that the Insured is, and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit or following any gainful occupation, for Three-tenths the maximum amount stated in the face of this policy. All Claims are payable at the Home Office of the Company, Paris, Texas, within ninety days after satisfactory proof of claim has been filed with the Company at its Home Office."

In order for appellee's plea of estoppel to prevail it would be incumbent upon him to show that he was authorized to have the contract set aside and reformed for fraud, accident or mistake. This appellee did not seek to do and neither party, under this record, will be permitted to take a position inconsistent with the terms of the policy to the prejudice of the other. United Fidelity Life Ins. Co. v. Fowler, Tex.Civ.App., 38 S.W.2d 128. The law is that the insured and the appellee are both presumed to have known the provisions of the statute under which appellant was incorporated and to have contracted in contemplation thereof and such statute by implication is written into the contract of insurance; also, that if the proper interpretation of an insurance· contract is in doubt the court will adopt the construction which makes the policy conform to the requirements of the law instead of an interpretation which would impute to the insured and insurer an intent to disregard the statute. First Texas Prudential Ins.

Co. v. Sorley, Tex.Civ.App., 272 S.W. 346, writ refused; 24 Tex.Jur. 701; § 25.

In *Southern Travelers' Ass'n v. Wright,* Tex.Com.App., 34 S.W.2d 823, the Supreme Court, speaking through Judge Sharp, holds that the intention of the parties in an insurance policy controls and that such intention, if the contract is unambiguous, must be determined from the instrument itself; that when a policy is issued and delivered the insured is bound by its terms and in the absence of fraud, accident or mistake the parties are conclusively presumed to have understood the subject matter and that the terms used were to be given their ordinary and accepted meaning.

■ This policy is not controlled by the provisions of subdivision 3 of article 4733 for the reason that Chapter 6, Title 78 provides in article 4788 that a mutual assessment company organized under this chapter and title "shall be subject only to the provisions of this chapter." This is the effect of the holding in Richmond v. Provident Ins. Co., Tex.Civ.App., 91 S.W. 2d 1180; Alamo Health & Accident Ins. Co. v. Cardwell, Tex.Civ.App., 67 S.W.2d 337; Empire Insurance Company of Texas v. Arriola, Tex.Civ.App., 80 S.W.2d 1119; International Travelers' Ass'n v. Bettis, Tex.Civ.App., 52 S.W.2d 1059, writ denied.

■ The words "A Reserve Insurance Company" in its ordinary and accepted meaning, we believe, were used to designate a company which provided for "the creation of a reserve fund" as Chapter 6 permits. The language "Whole Life Level Premium Policy" is explained, defined and qualified by the provisions contained in this contract that the insured shall pay the premium of $19.25 annually every year during her life and that such premium shall not be increased in any manner but shall remain as stated.

The appellee finally urges with much diligence and zeal that the punctuation contained in Section 12, above quoted, requires the interpretation that the policy insures against three separate and distinct hazards: (1) Death from any cause; (2) against loss of certain named members of the body by accident; and (3) against permanent and total disability. He asserts that the use of the semicolon after the word "death" and after the word "policy" in Section 12 separates it into three distinct and independent clauses which have no connection with each other and are independent of each other.

■ The writer claims but a superficial knowledge of punctuation but is afforded some consolation in ascertaining by investigation from the best authorities available that there is "much uncertainty and arbitrariness in punctuation"; that "The rules of punctuation are not absolutely fixed and inflexible and all do not follow such rules as are established"; that "punctuation is no part of the English language" and "is always subordinate to the text and is never allowed to control its meaning." W. K. Stoddart v. John Golden et al., 179 Cal. 663, 178 P. 707, 708, 3 A.L.R. 1060, and the annotations beginning on page 1062.

The Supreme Court of Texas holds that punctuation on account of its fallibility may be resorted to for interpretation only when all other means fail. Amory Mfg. Co. v. Gulf, C. & S. F. R. Co., 89 Tex. 419, 37 S.W. 856, 59 Am.St.Rep. 65. The Supreme Court of the United States holds that punctuation "is a most fallible standard by which to interpret a writing." Ewing v. Burnet, 11 Pet. 41, 54, 9 L.Ed. 624. Cooley's Briefs on Insurance, Second Edition, Volume 2, page 1007, upon the fallibility and trustworthiness of the use of punctuation to interpret a writing is in accord with the above authorities. Cyclopedia of Insurance Law, Couch, vol. 1, p. 379, § 185, announces that punctuation is always subordinate to the text and never allowed to control the meaning thereof. The conclusion drawn from the authorities is that punctuation, or the absence thereof, will not control the interpretation of a writing against the plain meaning of the instrument. If the punctuation were eliminated from Section 12 there would be little or no basis for the interpretation of the policy urged by appellee.

■ We are not prepared, however, to concede that Section 12, as punctuated, requires holding that the policy issued to the deceased in the sum of $1,000 covered death resulting from any and all causes.

■ The most satisfactory definition we have been able to find of a semicolon is in 57 C.J. 121, which, in part, is as follows: "According to well established grammatical rules, it is a mark of grammatical punctuation, or a point of punctuation, used for marking off a series of sentences or clauses of coordinate value, or for the purpose of continuing the expression of a

thought, and never for introducing a new idea." The remainder of the definition, in our opinion, does not change the meaning of the part quoted. "Co-ordinate" means equal, of the same order, rank, degree or importance; not subordinate. Webster's New International Dictionary. The clauses separated by semicolons were without superiority or inferiority and not independent of each other nor subordinate to each other. Black's Law Dictionary, Third Edition.

Inasmuch as the insured died from disease and not by accident, and neither fraud, accident nor mistake is alleged and neither party asserts that the contract is ambiguous, the intention of the parties must be ascertained from the contract and the insured is bound by its terms. Both parties are presumed to have known the provisions of the statute, which by implication is a part of the policy and we must adopt the construction which makes the policy conform to the requirements of the statute. Appellee's interpretation would impute to both the insured and the insurer an intent to disregard the law since under the statute the appellant was not authorized to issue an unlimited life insurance policy insuring the deceased against death resulting from any and all causes.

The judgment of the trial court decreeing appellee a recovery of one thousand dollars is reversed and here rendered that appellee have and recover of and from the appellant the sum of $300.