L. Q. ARNOLD et al., Appellants,

v.

ASHBEL SMITH LAND COMPANY, Appellee.

No. 13136.

Court of Civil Appeals of Texas.

Houston.

Nov. 21, 1957.

Rehearing Denied Dec. 12, 1957.

Fortney & Carter, Gerald H. Fortney, Baytown, for appellant.

Sam R. Fisher, Butler, Binion, Rice & Cook, Cecil N. Cook, Houston, for appellee.

WERLEIN, Justice.

This suit was brought by appellants in the District Court of Harris County against the appellee, Ashbel Smith Land Company, for a declaratory judgment, and against Humble Oil & Refining Company and Gulf Oil Corporation for an injunction. The latter two companies were dismissed at the trial on appellants' motion, and the matter of injunction went out of the case with their dismissal. The case was tried to the court without a jury, and on stipulations of the parties.

The court, on request of appellants, made its findings of fact and conclusions of law. The court found that Ashbel Smith Land Company as owner conveyed to the City of Pelly by deed dated August 2, 1946, a certain described tract of land consisting of 84.19 acres. Said deed contains the following reservation:

"Grantor expressly reserves unto itself, its successors and assigns, a one-fourth royalty in all oil, gas and other minerals in and under or hereafter produced from the above-described land; provided, however, that

"(a) Grantor, its successors or assigns, shall never have a right to enter upon said land to drill for or develop said royalty, and

"(b) Such reserved royalty shall be and stand subordinated to any and all valid liens hereafter placed, fixed or reserved on said land or any part thereof by Grantee, its successors or assigns, including in said liens the power of sale in any Deed of Trust which may be given as additional security for any indebtedness secured by any of the liens mentioned in this paragraph, and

"(c) Said royalty is reserved for a term of forty-nine (49) years, and

at the expiration of such term shall automatically terminate, and

"(d) Such royalty shall be non-participating, in the sense that it shall not be necessary for the Grantor, its successors or assigns, to join in the execution of any oil, gas and mineral lease which Grantee, its successors or assigns, may elect to execute covering said premises or any part thereof, nor shall Grantor, its successors or assigns, participate in any bonus received for the execution of any such lease, nor in any rentals paid by virtue of the terms of any such lease, but if oil, gas or other minerals be produced in commercial quantities, then Grantor, its successors or assigns, shall, during the term of the existence of such reserved royalty, have and receive one-fourth part of such oil, gas and other minerals so produced as a royalty."

Later, by deed dated August 8, 1946, the City of Pelly conveyed the same land to Tri-Cities Homebuilders, Inc., and in this deed there is contained the same reservation as in the deed from Ashbel Smith Land Company to the City of Pelly.

Subsequent to the execution and delivery of said deed dated August 8, 1946, said tract of land was subdivided into Wynnewood Addition and Longdale Addition of about 300 residential lots or tracts. Thereafter the appellants purchased and now own their respective lots subject only (insofar as this suit is concerned) to the royalty interest owned by appellee, Ashbel Smith Land Company, by virtue of the reservation in its deed to the City of Pelly.

In their petition, appellants alleged that in the event of oil or gas being produced in commercial quantities, said Ashbel Smith Land Company would be entitled to have and receive one out of every thirty-two parts of such production. Appellee contends, however, that it reserved a royalty of one-fourth of all of the oil, gas and

other minerals in and under or that may be produced from the land described in said deed, and that therefore it is entitled to receive one out of every four parts of said production. From the briefs filed herein it appears that the lots are presently under lease on the basis of a one-half royalty which is being paid one-half there-of to appellants and one-half to appellee.

The trial court entered judgment that under the reservation in the deed from the appellee, Ashbel Smith Land Company, to the City of Pelly, appellee was entitled to receive as a royalty one out of every four parts of the oil, gas and other minerals in and under, or that may be produced from the lots in question for a period of 49 years after August 2, 1946, and that with respect to such royalty the appellants, and each of them, take nothing as against the appellee, and that the declaratory relief as sought by the appellants be denied. The appellants in due course perfected their appeal and the case is now before this Court for review.

The sole issue before this Court is the determination of the royalty interest of the appellee in the lots of appellants under the terms of the reservation contained in said deed from appellee to the City of Pelly.

Appellee asserts in its counter-point No. 1 that the appellants have changed their position as to the interest of appellee under the reservation in question, in that in their petition and during the trial they contended that appellee had only a ⅟₃₂ royalty interest in the property in question, whereas in the latter part of their brief they say that they have abandoned their original position and now claim that the appellee owns an undivided ¼ of the minerals in place, and thus is entitled to ¼ of any royalty derived from the lots in question. The abandonment seems to be somewhat conditional and is confessed by appellants only if they are permitted without prejudice to their rights to urge their new position and to urge that appellee's position is wholly insupportable in law. The language of the so-called abandonment is somewhat vague. The attorney for appellants, in oral argument before this Court, stated that there had been no change in his position as argued in the trial court.

In their petition, appellants prayed that they have judgment fixing and declaring the interest, if any, of the Ashbel Smith Land Company to be not more than one out of every thirty-two parts of said production attributable to the lots or parcels of land owned by them. They also prayed for such other and further relief in law or equity as they might show themselves entitled to. While there may be some doubt as to whether appellants have changed their position as claimed by appellee, this Court has decided to construe the reservation in question and to fix and declare the interest reserved to appellee thereunder, bearing in mind in doing so the various contentions of the parties.

Appellants have presented for the consideration of this Court four points of error, as follows:

"First Point. The construction given the clause 'so produced as a royalty' by the Trial Court is violative of the rules of grammar and is not supported by the evidence.

"Second Point. The construction to be given an unambiguous instrument is a question of law and not of fact.

"Third Point. The deed having been prepared by Appellee as Grantor, the language of the reservation contained therein is to be construed most favorable to the Grantee therein and its assigns, who are the Appellants.

"Fourth Point. The construction given by the Trial Court to the language of the entire reservation and exception is contrary to law."

Appellants' fourth point, to the effect that the construction given by the trial court to the language of the entire

reservation and exception is contrary to law, is their main point. There is some question as to whether their second and third points are, indeed, points at all as they constitute in fact mere rules of construction or of law, without pointing out any action or error on the part of the trial court. Rule 418, Texas Rules of Civil Procedure. Their first point is limited to the construction of one clause in the reservation rather than the entire reservation, and merely asserts that the construction of the trial court is a violation of the rules of grammar and is not supported by the evidence.

We shall take up appellants' fourth point. In discussing the fourth point, we shall also consider appellants' first, second and third points as rules or canons of construction or principles of law.

Appellants have insisted that the last part of Section (d) of the reservation reading: "but if oil, gas or other minerals be produced in commercial quantities, then Grantor, its successors or assigns, shall, during the term of the existence of such reserved royalty, have and receive one-fourth part of such oil, gas and other minerals so produced as a royalty," in fact reserves to appellee only ¼ of any royalty from production on the appellants' lots in view of the fact that there is no comma between the word "produced" and the phrase "as a royalty" in the last line of such section. They concede, however, that if a comma had been placed before the phrase "as a royalty," then the words "so produced" would have referred to the words "produced in commercial quantities," and the phrase "as a royalty" would have referred to the words "have and receive one-fourth part of such oil, gas and other minerals."

Appellants requested that the court make findings of fact, and they specifically asked:

"1. To what predicate, if any, do you find as a fact that the clause hereafter quoted at the end of the language reserving and excepting a mineral estate to the Grantor in the Deed in question, 'so produced as a royalty', refers?"

In answer to this request, the trial court, in paragraph 6. of its Findings of Fact, made this finding:

"While Plaintiffs' specific request numbered 1 for a Finding of Fact is improper in that the finding requested is not and does not present a question of fact, the Court in response thereto nevertheless finds as set out in this Finding of Fact No. 6 with respect thereto. From a fair reading of the reservation as a whole and of the particular portion thereof inquired about by Plaintiffs, the words 'so produced as a royalty', which are the concluding words of the clause reserving unto the Ashbel Smith Land Company a mineral royalty in the above deed of August 2, 1946, refer as follows: The words 'so produced' refer to the words 'oil, gas and other minerals * * * produced in commercial quantities' preceding in subparagraph (d) of said reservation, and the words 'as a royalty' refer to the words 'have and receive' preceding in said subparagraph (d), so that the final clause in said royalty reservation is the same as if it had read ' * * * if oil, gas or other minerals be produced in commercial quantities, then Grantor, its successors or assigns, shall, during the term of the existence of such reserved royalty, have and receive as a royalty one-fourth (¼th) part of such oil, gas and other minerals so produced.' "

■■ While the finding in paragraph 6. of the court's Findings of Fact is not actually a finding of fact but a conclusion of law, nevertheless appellants will not be permitted in this Court to complain, because the trial court merely complied with their request asking the court to find as a fact to what predicate "so produced as a royalty" refers. Appellants have undertaken to isolate the words "so produced as a

royalty" from the remainder of the reservation. It is a primary rule of construction that no one phrase, sentence or section of an instrument should be isolated from its setting and considered or construed from other provisions or out of context in attempting to arrive at a construction. Guardian Trust Company v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579; Citizens National Bank in Abilene v. Texas & P. R. Co., 136 Tex. 333, 150 S.W.2d 1003.

■ We are in accord with the finding of the court and the trial court's conclusions of law upon considering the reservation as a whole and the particular portion inquired about in appellants' request,. that the words "so produced as a royalty" were repetitious, and that the court was correct in finding or concluding that the words "so produced" refer to the words "oil, gas and other minerals * * * produced in commercial quantities" and that the words "as a royalty" refer to the words "have and receive" preceding in said subparagraph (d) of the reservation in question; and that the true meaning of such phrase is: " * * if oil, gas or other minerals be produced in commercial quantities, then Grantor, its successors or assigns, shall, during the term of the existence of such reserved royalty, have and receive as a royalty one-fourth part of such oil, gas and other minerals so produced."

■ In interpreting terms of a written instrument, courts can and should look through the entire instrument and transpose words or sentences if the intent of the parties can thereby be effectuated without defeating the purpose of the instrument. Butler v. Southwest Dairy Products Co., Tex.Civ.App., 146 S.W.2d 1036, error dismissed, judgment correct. The phrases "so produced" and "as a royalty" are in the same sequence as their respective antecedents. Were appellants' contention correct, to the effect that the last two lines of subsection (d) of the reservation in question mean that appellee was to receive only a one-fourth part of the royalty produced,

we can see no reason for the article "a" immediately preceding the last word in the sentence, "royalty." In other words, while we by no means think the presence or absence of the article "a" controlling when considering the reservation as a whole, it would seem that under appellants' contention the phrase should read, "so produced as royalty" rather than "so produced as a royalty."

In the case of Empire Insurance Company of Texas v. Cooper, Tex.Civ.App., 138 S.W.2d 159, 163, the court said: "The conclusion drawn from the authorities is that punctuation, or the absence thereof, will not control the interpretation of a writing against the plain meaning of the instrument."

The case of Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W. 2d 800, 803, 127 A.L.R. 1217, clearly shows that the courts seeking to arrive at the intention of the parties will do so without reference to punctuation, if that can be done. In this case, the court was considering the effect of the following reservation:

"* * * 'and the said N. J. and M. E. Johnson reserves ½ interest in all Minerells Paint Rock &c found or will be found on said described tract of land.' "

In arriving at the intention of the parties the court made the following statement:

"The following rules with reference to punctuation have been announced: The words, not the punctuation, are the controlling guide in construing a contract. If the meaning of the words is clear the court will interpret a contract according to their meaning and without regard to the punctuation marks or the want of them. While punctuation may be resorted to in order to solve an ambiguity which it has not created, punctuation or the absence of punctuation will not of itself create ambiguity. (citing cases).

"The absence of the comma between 'Minerells' and 'Paint Rock' does not cause ambiguity or such uncertainty in the meaning of the reservation as will permit the consideration of extrinsic evidence in construing the deed; and we may insert the comma, in order to ascertain from the words used the intention of the parties."

In the instant case, the court could insert a comma between the word "produced" and the phrase "as a royalty" if necessary to arrive at the intention of the parties, but we do not think it necessary for the court to do so as the language used, when read in connection with the entire reservation, appears to be perfectly clear and unambiguous. Indeed, appellants have asserted that the language of the reservation in question is unambiguous, and appellee has stated that it is willing to rely upon the construction of the language as such. There is no question but that appellants are correct in stating in their second point that the construction to be given an unambiguous instrument is a question of law and not of fact.

In their third point, appellants contend that, "The deed having been prepared by Appellee as Grantor, the language of the reservation contained therein is to be construed most favorable to the Grantee therein and its assigns, who are the Appellants." There is nothing in the record to show that the deed was prepared by appellee. However, it is recognized that ordinarily a deed will be construed most strongly against the grantor. This canon of construction is not applied by the courts where the intention of the parties is clearly expressed and the instrument is unambiguous. Citizens National Bank in Abilene v. Texas & P. R. Co., 136 Tex. 333, 150 S.W.2d 1003.

As the court stated in Wood Motor Co. v. Nebel, 150 Tex. 86, 238 S.W.2d 181, 185: "There being no ambiguity in the language of the contract, resort to rules of construction is not permissible."

In the case of Alexander Schroeder Lumber Co. v. Corona, Tex.Civ.App., 288 S.W. 2d 829, 833, writ refused, n. r. e., this Court through the late Justice Gannon, stated in regard to the rule of construing deeds against grantors:

"The rule of strict construction against the grantor is resorted to only to resolve ambiguity and as an aid by legal presumption to arriving at intent. It is not applicable in the absence of ambiguity, and even in its presence is never used as a hypercritical and overly literal tool to override the manifest object and purpose of the language of writings. The rule is but a canon of construction and is subordinate to the requirement that every part of a deed should be harmonized and given effect where possible so as to effectuate the intention of the parties."

There is, of course, nothing in the record to show that the trial court did not have in mind the foregoing canon of construction in construing the reservation in question, or that the court failed to construe the reservation most strongly against the grantor and in favor of the grantee so as to convey the greatest estate which the language used could be construed to pass.

In the case of Acklin v. Fuqua, Tex. Civ.App., 193 S.W.2d 297, 299, error refused, n. r. e., cited by appellants, the court stated:

"The Supreme Court has approved several cardinal rules for construing such instruments. In the case of Fleming v. Ashcroft, 141 Tex. 41, 175 S.W. 2d 401, 406, * * * the Court said: 'The intention must be gathered primarily from a fair consideration of the whole instrument, and the language employed therein, and the construction given it should harmonize with the

terms of the deed, including its scope, subject-matter, and purpose.' "

■ In arriving at the intention of the parties in connection with the reservation in question, it is therefore necessary to consider the reservation as a whole. When we do so, it appears that the word "royalty" is used seven times in the reservation, and the interest of the appellee is referred to as royalty and is so limited and defined.

■ In Section (d) of the reservation, appellee's royalty is denominated non-participating. There are certain attributes of a non-participating royalty. It is an interest in minerals which is nonpossessory in that it does not entitle the owner to produce the minerals himself, or permit him to join in leases of the mineral estate to which the royalty is appurtenant, and does not entitle the owner to share in the bonus or delay rentals, if any, paid for such lease. It merely entitles the owner to a certain share of the production under said lease free of expenses of exploration and production. Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543; Miller v. Speed, Tex. Civ.App.1952, 248 S.W.2d 250.

It would seem that the interest reserved by appellee in the reservation in question is clearly a "royalty" because the very reservation itself supplies all of the elements of a non-participating royalty interest. Section (a) of the reservation provides that the grantor in said deed, its successors or assigns, shall never have a right to enter upon said land to drill for or develop said royalty. Section (d) of the reservation provides:

"Such royalty shall be non-participating, in the sense that it shall not be necessary for the Grantor, its successors or assigns, to join in the execution of any oil, gas and mineral lease which Grantee, its successors or assigns, may elect to execute covering said premises or any part thereof, nor shall Grantor, its successors or assigns, participate in any bonus received for the execution of any such lease, nor in any rentals paid by virtue of the terms of any such lease, but if oil, gas or other minerals be produced in commercial quantities, then Grantor, its successors or assigns, shall, during the term of the existence of such reserved royalty, have and receive one-fourth part of such oil, gas and other minerals so produced as a royalty."

■ It is appellants' contention, in what appears to be a changed position by them, that there was reserved a mineral interest in said reservation and not merely a royalty, and appellants particularly rely upon the words "in and under" as determinative of the interest reserved. The first paragraph of the reservation in the deed from Ashbel Smith Land Company reads as follows:

"Grantor expressly reserves unto itself, its successors and assigns, a one-fourth royalty in all oil, gas and other minerals in and under or hereafter produced from the above-described land; provided, however, that [here follow sections (a), (b), (c), and (d)]."

It will be noted that in the very first paragraph the interest reserved is a *one-fourth royalty* in all oil, gas and other minerals in and under or hereafter produced * * *. (Emphasis supplied.) We do not think that the words "in and under" change the nature of the royalty interest reserved into a mineral interest as distinguished from a royalty interest. Throughout the entire reservation the reserved interest is referred to as a royalty.

In the case of Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43, 45, a reservation of "a one-thirty-second (1/32) royalty interest in and to all the oil, gas and other minerals in, upon or under the above described property, such royalty to be delivered to the Grantor her heirs, or assigns, as is usual where oil, gas or other minerals are produced and saved from said land." was held

to create in the grantor a perpetual royalty of ⅟₃₂ of the production.

In Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699, our Supreme Court was called upon to construe the following language contained in a conveyance:

"* * * together with a ¹⁵⁄₁₆ interest in and to all the oil, gas and other minerals in and under and that may be produced from said land and the Grantor retains title to a ¹⁄₁₆ interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land; but it is distinctly agreed and understood that the grantor, his heirs and assigns, shall not receive any part of the money rental paid on any future lease; and the grantee, his heirs or assigns, shall have authority to lease said land and receive the cash bonus and rental; and the grantor, his heirs or assigns, shall receive the royalty retained herein only from actual production of oil, gas or other minerals on said land."

The grantee in the foregoing deed claimed that under such reservation the grantor retained only a ¹⁄₁₆ of the usual ⅛ royalty, but the Supreme Court of Texas held that the reservation was of a ¹⁄₁₆ royalty and not a ¹⁄₁₆ mineral interest, saying:

"Had the word 'royalty' appeared in the first clause, above quoted, of the deed, by which the ¹⁄₁₆ was reserved—that is, had that clause read 'the grantor retains title to a ¹⁄₁₆ royalty interest'—then there could be no contention that the interest reserved was only a mineral fee interest. Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543; Brown v. Smith, 141 Tex. 425, 174 S. W.2d 43. Certainly the reservation should not be given a different meaning merely because the description of the reserved interest as a royalty appears in the last clause of the sentence rather than in the first clause."

In the instant case, the word "royalty" is used in the first paragraph of the reservation. It is also used in Sections (a), (b), (c) and (d) thereof, in all seven times, as heretofore stated.

The Court of Civil Appeals, in Watkins v. Slaughter, Tex.Civ.App., 183 S.W.2d 474, 477, stated:

"Applying those rules of interpretation to the reservation contained in the deed from Bob Slaughter to appellant, F. G. Watkins, we are forced to the conclusion that the ¹⁄₁₆ interest reserved by Slaughter was royalty and intended by the parties to the deed to be royalty * * * In order to apply to the reservation the interpretation contended for by appellants, it would be necessary to disregard completely the last clause, which designates the reservation as royalty * * * Since the term 'royalty' has a well-defined meaning in the oil and gas industry and has been recognized by the courts to be a share of the product or profit reserved by the owner as a consideration for permitting another to use his property for the purpose of prospecting for, discovering, and producing oil, gas, and other substances, and the portion reserved by Slaughter was designated as 'royalty,' it necessarily follows that the reservation consisted of ¹⁄₁₆ of all of all of the oil, gas, and other minerals that might thereafter be produced from the land under any lease executed by the grantee, his heirs or assigns."

In Schlittler v. Smith, Tex.Com.App. 1937, 128 Tex. 628, 101 S.W.2d 543, 544, the conveyance contained the following reservation:

"Grantor H. F. Smith hereby reserves unto himself, his heirs and assigns for a period of ten years and as much longer thereafter as oil and gas or other minerals are being produced an undivided one-half interest

in and to the royalty rights on all of oil and gas and other minerals in, on and under or that may be produced from the land herein conveyed and described above."

The court held that the reservation was only of royalty rights, and that it did not include a reservation of bonuses or rentals but only of an interest in oil, gas or minerals paid, received, or realized as royalty under any lease existing on the land at the time of the reservation, or thereafter executed by the grantee, his heirs or assigns.

In the case of Caraway v. Owens, Tex. Civ.App., 254 S.W.2d 425, 426, writ refused, the reservation in a warranty deed was as follows: "* * * but I do except and reserve out of said conveyance a fee royalty of ⅟₃₂ of the oil and gas and ¼ of all the other royalties received from said property." The court stated with respect to such reservation:

"Appellants make the contention that the reservation should be construed as being a ⅟₃₂ of the ⅛ of the oil and gas royalty, or a ⅟₂₅₆ interest. There might be some merit in this contention had appellee reserved a ⅟₃₂ of the oil and gas royalty. However, the reservation does not do this, but on the contrary, excepts and reserves out of said conveyance a 'fee royalty of ⅟₃₂ of the oil and gas * * * received from said property.' The trial court correctly held that appellee 'Nellie Owens, is the legal owner and holder of a full ⅟₃₂ royalty, or the equivalent of a ¼ of the usual ⅛ royalty interest in and to all of the oil and gas and ¼ of all other royalties received from the 660 acres of land.'"

In the case of Miller v. Speed, Tex. Civ.App., 248 S.W.2d 250, 256, the court stated, in discussing the case of Pinchback v. Gulf Oil Corporation, Tex.Civ.App., 242 S.W.2d 242 (no writ history), the following:

"Although the reserved interest was not referred to in the deed as royalty and it was not expressly stated that the reserved interest was free of cost, the language used clearly shows the quality and nature of the interest reserved and that it was intended that the reserved interest was not in the minerals in place but only in the oil thereafter produced, saved and made ready for the market * * * The nature and quality of the reservation is further clearly shown by the provision that the owner of the reserved interest had no right to execute a lease or to share in any bonus or delay rentals."

Appellants rely chiefly on the case of Little v. Mountain View Dairies, Inc., Cal., 208 P.2d 361, and Jones v. Bedford, Tex. Civ.App., 56 S.W.2d 305, no writ history.

In the Mountain View Dairies case, supra [208 P.2d 362], the reservation was an "* * * (8⅓%) of all oil, gas and other hydrocarbon substances, and minerals, in, under/or which may be hereafter produced and saved from" the land. The California Supreme Court, on a second appeal, held that an expense bearing mineral fee interest was reserved thereby. This case is clearly distinguishable from the present case in that the parties themselves in the Mountain View Dairies case did not designate the interest as a royalty, and did not provide that the owner thereof would receive, if oil, gas or other minerals were produced in paying quantities, a definite fraction of such oil, gas and other minerals so produced as a royalty. Moreover, they did not provide that the interest was non-possessory, and that the owner of such interest had no "executive rights."

In the case of Jones v. Bedford, supra [56 S.W.2d 306], while the parties did denominate the mineral grant a royalty interest, they proceeded to ascribe to it all the attributes of a mineral fee interest, and, indeed, the grant provided that in the event the lease described should for any reason become cancelled or forfeited, then and in

that event an undivided ⅛ of ⅛ of the lease interest and all future rentals on said land for oil and gas, and other mineral privileges should be owned by said grantees, "owning ⅛ of ⅛ of all oil, gas and other minerals in and under said lands, together with ⅛ of ⅛ royalty interest in all future rents." Certainly, here the court was justified in concluding that there was more conveyed than a mere royalty interest and in disregarding what was obviously a misnomer. The parties even used the term "royalty" to describe an interest in rentals.

After a careful study of the reservation in question and the authorities, this Court holds that the trial court was correct in its findings of fact and conclusions of law, and that the reservation in question is of a one-fourth non-participating royalty interest. We, therefore declare that the appellee is entitled to receive as a royalty one out of every four parts of the oil, gas and other minerals produced from appellants' lots.

The judgment of the trial court is affirmed.