**Opinion filed September 14, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00169-CV
_____

## PACER ENERGY, LTD., Appellant

## V.

## ENDEAVOR ENERGY RESOURCES, LP; PONY OIL, LLC; VIPER ENERGY PARTNERS, LLC; MKSEA, LLC; ROYALTY ASSET HOLDINGS, LP; AND PONY OIL OPERATING, LLC, Appellees

**On Appeal from the 118th District Court**
**Martin County, Texas**
**Trial Court Cause No. 7518**

## O P I N I O N

This appeal concerns a conveyance in a 1923 warranty deed of "One-Eighth of the Oil and Mineral rights . . . conveyed as a royalty." In two 1960 declarations of interest, the grantor and the grantee's successors-in-interest later described the

conveyed interest to be "1/8 of all of the oil, gas and mineral rights . . . as a free royalty interest."

Appellant, Pacer Energy, Ltd., contends that the grantors conveyed a floating 1/8 of the royalty interest to the grantee and his successors. Appellees[1] assert that the deed conveyed a 1/8 fixed royalty. The trial court granted summary judgment in favor of Appellees wherein it declared that the 1923 deed conveyed a fixed 1/8 royalty interest. Pacer brings a single issue challenging the trial court's grant of summary judgment. We affirm.

*Background Facts*

In 1923, A.F. Becker and wife Rose M. Becker conveyed by warranty deed to J.L. Henderson a tract of real property in Martin County described as follows: "Being all of the South West One-Fourth (SWl/4) of Section Thirty-six (36), Block A, Bauer & Cockrell Survey in Martin County, Texas, containing One Hundred Sixty Acres (160) A." The 1923 deed contained the following provision that is at issue in this appeal:

> It is expressly agreed and stipulated that Seven Eights of all Oil and Mineral rights on said [property] is retained by the grantors herein, A.F. Becker, and wife Rose M. Becker, and the other One-Eighth of the Oil and Mineral rights therein is hereby conveyed as a royalty to the said J. L. Henderson, his heirs and assigns.

By 1960, Henderson had conveyed the south 100 acres of the property to H. G. Keaton and wife, Martha Keaton, and he had conveyed the north sixty acres to Walter Nichols and wife Irene Nichols. The Beckers executed two documents entitled "Declaration of Interest" with the Keatons and the Nicholses, respectively, each of which made the following declaration:

> The interest originally reserved in the aforesaid deed to A. F. BECKER and wife, ROSE M. BECKER, and the interest presently

[1]Appellees are Endeavor Energy Resources, LP, Pony Oil, LLC, Viper Energy Partners, LLC, MKSea, LLC, Royalty Asset Holdings, LP, and Pony Oil Operating, LLC.

owned by the said A. F. BECKER and wife, ROSE M. BECKER, [in the property] is the full interest in the minerals in said land, subject only to an outstanding 1/8 of all of the oil, gas and mineral rights owned by [the Keatons and the Nicholses] as a free royalty interest in and to [the property]. The royalty interest owned by [the Keatons and the Nicholses] is a non-participating royalty interest payable out of any production of oil, gas and other minerals, if, as and when produced from [the property].

Pacer is a successor-in-interest to the Beckers' reserved interest. Appellee Endeavor is also a successor-in-interest to the Beckers' reserved interest and the current operator of the property. The remaining Appellees are successors-in-interest of the interest conveyed by Becker to Henderson.

Appellees filed a motion for summary judgment seeking a declaration that the Beckers conveyed a 1/8 fixed royalty interest. Pacer filed a counter-motion for partial summary judgment asserting that the Beckers conveyed a 1/8 floating royalty interest. Pacer also asserted that the Beckers reserved all of the minerals and a floating 7/8 floating royalty interest. In addition to the 1923 deed, Pacer also relied on the 1960 declarations of interest in making these contentions. The trial court granted Appellees' motion and denied Pacer's motion. Afterwards, the parties executed a stipulation that resolved the issue of costs and attorneys' fees, thereby making the trial court's rulings a final judgment.

*Analysis*

Pacer brings a single issue challenging the trial court's grant of summary judgment in favor of Appellees and the denial of Pacer's motion for summary judgment. "We review the trial court's grant of summary judgment de novo." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). Summary judgment is proper when no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When the parties file

3

competing summary judgment motions and the trial court grants one and denies the other, "we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).

We review a trial court's construction of a deed de novo. *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020). An appellate court may only construe a deed as a matter of law if it is unambiguous. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018) (citing *J. Hiram Moore, Ltd. v. Greer*, 172 S.W.3d 609, 613 (Tex. 2005)). If a deed is worded in such a way that it can be given a certain or definite legal meaning, then the deed is not ambiguous. *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 601 (Tex. 2018). Here, the parties do not contend that the deed and declarations are ambiguous, nor do we find them to be ambiguous.

Our task when construing an unambiguous deed is to "ascertain the intent of the parties from all of the language in the deed" as expressed within the "four corners" of the instrument. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The four-corners rule requires the court to ascertain the intent of the parties solely from all of the language in the deed. *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (citing *Luckel*, 819 S.W.2d at 461). The intent that governs is not the intent that the parties meant but failed to express but, rather, the intent that is expressed. *Luckel*, 819 S.W.2d at 462.

"A mineral estate consists of five interests: 1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, 4) the right to receive delay rentals, and 5) the right to receive royalty payments." *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995) (citing *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986)); *In re Estate of Slaughter*, 305 S.W.3d 804, 808 (Tex. App.—Texarkana

4

2010, no pet.). "When a mineral estate is conveyed, all interests are transferred unless they are specifically reserved to the grantor." *Slaughter*, 305 S.W.3d at 808.

The parties agree that the Beckers conveyed a royalty interest to Henderson in the 1923 deed. "A royalty interest derives from the grantor's mineral interest and is a nonpossessory interest in minerals that may be separately alienated." *Luckel*, 819 S.W.2d at 463. "The same instrument may convey an undivided portion of the mineral estate and a separate royalty interest, and the royalty interest conveyed may be larger or smaller than the interest conveyed in the minerals in place." *Id.* As noted by a legal commentator, of the five "sticks" in "the bundle" of mineral interests, "[r]oyalty is likely the most litigated stick within the bundle." Christopher Kulander, "'Fixed vs. Floating' Mineral and Royalty Questions in Texas: Is the End Any Nearer?" *Law of Permian Basin Oil & Gas Development and Operations* 6B-1, 6B-1 (Found. for Nat. Res. & Energy L. 2023).

The dispute in this appeal focuses on the nature of the royalty interest conveyed by the Beckers to Henderson—fixed versus floating. The resolution of this question affects the quantum of royalty conveyed to Henderson. The Texas Supreme Court has explained the distinction between a fixed royalty interest and a floating royalty interest in the following manner:

> A royalty interest "is a nonpossessory interest in minerals that may be separately alienated." It may be conveyed or reserved in two ways: "'as a fixed fraction of total production' (fractional royalty interest) or 'as a fraction of the total royalty interest' (fraction of royalty interest)." A fractional royalty interest is referred to as a fixed royalty because it "remains constant" and is untethered to the royalty amount in a particular oil and gas lease. A fraction of royalty interest is referred to as a floating royalty because it varies depending on the royalty in the oil and gas lease in effect and is calculated by multiplying the fraction in the royalty reservation by the royalty in the lease. The language used in the conveyance instrument determines whether the interest is fixed or floating.

*U.S. Shale Energy II, LLC v. Laborde Properties, L.P.*, 551 S.W.3d 148, 152 (Tex. 2018) (internal citations omitted); *see Hysaw v. Dawkins*, 483 S.W.3d 1, 9 (Tex. 2016). Thus, a fixed royalty is a fraction of gross production while a floating royalty is a fraction of the royalty reserved in an oil and gas lease. *See* Patrick LeMasters and Paul P. Santoyo, *Fixed vs. Floating*, State Bar of Tex., TXCLE Oil, Gas and Min. Title Examination Course 10-III (2022).

We begin our analysis with the 1923 deed because the nature of the interest conveyed by a deed is ascertained from the language of the deed itself. *See Endeavor Energy Res., LP v. Trudy Jane Anderson Testamentary Tr., by & Through Anderson*, 644 S.W.3d 212, 223-24 (Tex. App.—Eastland 2022, pet. denied). Our focus is on the following language in the 1923 deed:

> It is expressly agreed and stipulated that Seven Eights of all Oil and Mineral rights on said [property] is retained by the grantors herein, A.F. Becker, and wife Rose M. Becker, and the other One-Eighth of the Oil and Mineral rights therein is hereby conveyed as a royalty to the said J. L. Henderson, his heirs and assigns.

The key phrase in our analysis of the 1923 deed is the words "Oil and Mineral rights." Pacer contends that the parties' use of "Oil and Mineral rights" was a reference to the royalty interest to be derived from the mineral estate. Pacer essentially asserts that the term "royalty interest" should be substituted for "Oil and Mineral rights" such that the Beckers conveyed 1/8 of the royalty interest to Henderson, which would be a floating royalty interest. In support of this contention, Pacer notes that the use of the word "of" in the description of a royalty interest is often associated with the description of a floating royalty interest. *See* Christopher Kulander, *Fixed vs. Floating Non-Participating Oil & Gas Royalty in Texas: And the Battles Rage on . . .*, 4 TEX. A&M L. REV. 41, 46 (2016) (noting that the word "of" commonly acts as a multiplication sign in describing a floating royalty).

In 1937, the Texas Supreme Court referred to the term "mineral rights" in the following manner:

> The words "royalty," "bonus," and "rentals" have a well-understood meaning in the oil and gas business. Likewise, "minerals" and "mineral rights" have a well-recognized meaning. Broadly speaking, a reservation of minerals or mineral rights without limitation would include royalties, bonuses, and rentals. A conveyance of land without reservations would include all minerals and mineral rights. However, it is well settled that a grantor may reserve minerals or mineral rights and he may also reserve royalties, bonuses, and rentals, either one, more or all.

*Schlittler v. Smith*, 101 S.W.2d 543, 544 (Tex. 1937). Thus, the court considered the term "mineral rights" to be synonymous with "minerals" as references to the mineral estate rather than a reference to only a royalty interest. *See id.* The Fort Worth Court of Appeals agreed with this conclusion in *Sundance Minerals, L.P. v. Moore* when it stated that a reservation of the "oil, gas, and other mineral rights" would constitute a reservation of the mineral estate. 354 S.W.3d 507, 510, 512 (Tex. App.—Fort Worth 2011, pet. denied) (citing *Schlittler*, 101 S.W.2d at 544–45). We reached the same conclusion in *Hester v. Weaver*, 252 S.W.2d 214, 215 (Tex. App.—Eastland 1952, writ ref'd) (holding that a reservation of "one-half interest in all oil and mineral rights" constituted a reservation of one-half of the mineral estate). Moreover, the 1924 reservation at issue in *Van Dyke v. Navigator Group* was of "one-half of one-eighth of all minerals and mineral rights in said land," and there was no dispute that it was a reservation of a portion of the mineral estate. 668 S.W.3d 353, 357–58 (Tex. 2023).

Pacer also relies on the language in the 1960 declarations of interest to assert that "oil and mineral rights" in the 1923 deed referenced a royalty interest. The declarations of interest provide as follows:

The interest originally reserved in the aforesaid deed to A. F. BECKER and wife, ROSE M. BECKER, and the interest presently owned by the said A. F. BECKER and wife, ROSE M. BECKER, [in the property] is the full interest in the minerals in said land, subject only to an outstanding 1/8 of all of the oil, gas and mineral rights owned by [the Keatons and the Nicholses] as a free royalty interest in and to [the property]. The royalty interest owned by [the Keatons and the Nicholses] is a non-participating royalty interest payable out of any production of oil, gas and other minerals, if, as and when produced from [the property].

Pacer asserts that the use of "minerals" and "mineral rights" in the declarations reflect that the parties intended for the two terms to mean different things, and that the 1923 deed's use of "mineral rights" indicates that the parties intended for it to mean "royalty interest."

The parties used "minerals" in the declarations to declare that the Beckers reserved "the full interest in the minerals." However, this reservation, as described in the declarations, was "subject only to an outstanding 1/8 of all of the oil, gas and mineral rights" that the Beckers had conveyed to Henderson. "The words 'subject to,' used in their ordinary sense, mean subordinate to, subservient to or limited by." *Wenske*, 521 S.W.3d at 796 (quoting *Kokernot v. Caldwell*, 231 S.W.2d 528, 531 (Tex. Civ. App.—Dallas 1950, writ ref'd). Thus, the declarations did not reserve "the full interest in the minerals" to the Beckers because their reservation of the mineral estate was limited by the "1/8 of all of the oil, gas and mineral rights" that the Beckers had conveyed to Henderson. Because the interest conveyed to Henderson was carved from the same mineral estate reserved by the Beckers, the parties' use of "minerals" and "mineral rights" in the declarations of interest does not indicate that they were treating the terms differently. *See Luckel*, 819 S.W.2d at 463 ("A royalty interest derives from the grantor's mineral interest.")

As noted previously, courts have considered the terms "minerals" and "mineral rights" to be synonymous terms for referring to the mineral estate. *See*

*Schlittler*, 101 S.W.2d at 544. The 1923 deed conveyed 1/8 of the "oil and mineral rights" to Henderson, which is a description of the mineral estate. *See id.*; *Sundance Minerals*, 354 S.W.3d at 510, 512; *Hester*, 252 S.W.2d at 215. The 1960 declarations did not change this description of the conveyed interest by its reference to "1/8 of all of the oil, gas and mineral rights" because it is also a reference to the mineral estate. Accordingly, Pacer's contention that the use of "mineral rights" by the parties was a reference to a "royalty interest" is incorrect.

Our analysis does not end there, however, because both the 1923 deed and the 1960 declarations of interest provided that the 1/8 interest in the mineral estate conveyed to Henderson was "conveyed as a royalty," and "as a free royalty interest in and to [the property]," respectfully. In 1945, the Texas Supreme Court addressed a similarly worded provision in *Watkins v. Slaughter* wherein the grantor reserved a 1/16 interest in the mineral estate that the parties designated in the conveyance as a royalty. 189 S.W.2d 699, 699–700 (Tex. 1945).[2] The court held that the grantor reserved a fixed 1/16 royalty interest rather than "only a mineral fee interest." *Id.* at 700.

Pacer asserts that *Watkins* is distinguishable because the reservation there was for royalty "retained . . . from actual production." *See id.* at 699. Pacer contends that the interest conveyed to Henderson was not carved from the minerals that "may

---

[2]The deed in *Watkins* provided as follows:

Together with a 15/16 interest in and to all the oil, gas and other minerals in and under and that may be produced from said land and the grantor retains title to a 1/16 interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land; but it is distinctly agreed and understood that the grantor, his heirs and assigns, shall not receive any part of the money rental paid on any future lease; and the grantee, his heirs or assigns, shall have authority to lease said land and receive the cash bonus and rental; and the grantor, his heirs or assigns[,] shall receive the royalty retained herein only from actual production of oil, gas or other minerals on said land.

189 S.W.2d at 700.

be produced" because the Beckers reserved the "full" interest in the minerals by virtue of the declarations of interest. But as we previously noted, the Beckers did not reserve the full interest in the minerals because the reservation was subject to the interest they conveyed to Henderson. Moreover, similar to the language in *Watkins*, the declarations clarified that the royalty interest conveyed by the Beckers to Henderson was "payable out of any production of oil, gas and other minerals, if, as and when produced from [the property]."

Pacer also asserts that under *French*, we must conclude that the Beckers conveyed a floating royalty to Henderson. Pacer cites *French* for the proposition that "when a deed conveys a fraction of a mineral estate but then calls it a royalty, it becomes a floating royalty if the deed otherwise establishes that the conveyance does not include any non-royalty rights." In *French*, the grantor conveyed "an undivided Fifty (50) acre interest, being an undivided 1/656.17th interest in and to all of the oil, gas and other minerals, in, under and that may be produced" as "*a royalty interest only*." 896 S.W.2d at 796. As noted by the court, the conflict in *French* was that the first part of the conveyance appeared to convey a mineral estate while the second part explicitly stated that only a royalty interest was being conveyed. *Id.* at 797. The court concluded that the deed conveyed a royalty interest. *Id.* at 798. The court went on to state: "In other words, when a deed conveys a royalty interest by the mechanism of granting a fractional mineral estate followed by reservations, what is conveyed is a *fraction* of royalty, not a fixed fraction of total production royalty." *Id.* Pacer relies upon this statement to assert that the Beckers conveyed a floating royalty interest to Henderson.

At oral argument, Appellees directed our attention to *Temple-Inland Forest Products Corp. v. Henderson Family Partnership, Ltd.* as a limitation on the holding in *French*. 958 S.W.2d 183 (Tex. 1997). The deeds in *Temple-Inland* contained a reservation wherein the grantor reserved an "undivided one-sixteenth (1/16th) part

10

of and interest in the oil, gas and other minerals retained and reserved by the Grantor in said land, it is understood and agreed that *said one-sixteenth (1/16th) interest is and shall always be a royalty interest*." *Id.* at 184. The court noted that the reservation was similar to the conveyance in *Watkins*, and that the court had held in *Watkins* that the grantor had reserved a 1/16 fixed royalty. *Id.* at 185 (citing *Watkins*, 189 S.W.2d at 699–700). The court then stated "[w]e adhere to our decision in *Watkins* and hold that the reservation in the [subject] deed was a 1/16 fixed royalty." *Id.* The court further clarified: "Our decision in *French v. Chevron* did not overrule *Watkins v. Slaughter*." *Id.* The court distinguished *French* on the basis that it involved a specified fifty-acre tract that the court characterized as fifty royalty acres. *Id.* The court concluded that the reservation in *French* of "50 royalty acres out of a 32,808.5 acre tract is entitled to receive 50/32,808.5 *of* royalty, not a 50/32,808.5 fixed royalty." *Id.*

As recognized in *Temple-Inland*, the determination of a floating royalty in *French* was based on a specific conveyance of royalty acres. *Id.* Here, the conveyance is of an undivided interest in the mineral estate like the conveyances in *Watkins* and *Temple-Inland*. And as noted in *Temple-Inland*, *French* did not overrule *Watkins*. *Id.* Accordingly, *French* does not require a determination that the Beckers conveyed a floating royalty interest to Henderson.

In summary, the resolution of the fixed versus floating royalty question in this case hinges on whether the Beckers conveyed to Henderson a fraction of gross production (a fixed royalty) or a fraction of the royalty to be reserved in an oil and gas lease (a floating royalty). *See* Patrick LeMasters and Paul P. Santoyo, *Fixed vs. Floating*, State Bar of Tex., TXCLE Oil, Gas and Min. Title Examination Course 10-III (2022). As noted by Texas Supreme Court in *U.S. Shale*, a fixed royalty interest is "untethered to the royalty amount in a particular oil and gas lease." 551 S.W.3d at 152. The parties did not tether—in either the 1923 deed or the 1960

11

declarations of interest—the interest conveyed to Henderson to the royalty in a lease. To the contrary, the royalty interest conveyed by the Beckers to Henderson was a 1/8 fraction of gross production—a 1/8 fixed royalty.

Finally, Pacer contends that, because the usual lease in 1923 provided for a 1/8 royalty, the parties must have intended for the 1/8 royalty interest conveyed to Henderson to be a 1/8 floating royalty. *See Hysaw*, 483 S.W.3d at 10; *Luckel*, 819 S.W.2d at 462. In this regard, Pacer suggests that the Beckers would not have agreed to convey the entire royalty interest to Henderson. However, "Texas has long recognized the principle that parties are free to contract as they see fit as long as their agreement does not conflict with public policy." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 495 (Tex. 2019). As recognized in a legal treatise:

> [I]t is certainly possible for parties to agree that one is to receive the full 1/8 royalty and such agreement does not render the land unleasable. Where the provisions of the instrument are indicative of a royalty grant or reservation, a number of cases hold the interest to be a royalty, despite the fact that the fraction is 1/8, passing all royalty to one of the parties.

1 Patrick H. Martin & Bruce M. Kramer, WILLIAMS & MEYERS, OIL & GAS LAW § 304.11 (2016) (citing as examples *Davis v. Mann*, 234 F.2d 553 (10th Cir. 1956) and *Lawson v. Earp*, 309 P.2d 721 (Okla. 1956) as cases that involved the grant or reservation of a fixed 1/8 royalty).[3] Accordingly, Pacer's reliance on the fact that the usual royalty in a 1923 lease was 1/8 does not override the specific language of the 1923 deed and the 1960 declarations of interest conveying a 1/8 fixed royalty to Henderson and his successors-in-interest.

We overrule Pacer's sole issue on appeal.

---

[3]Martin and Kramer also cite *Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.), a case involving a reservation of a 1/4 fixed royalty. *Id.* The authors noted that this large, fixed royalty did not prevent the land from being leased. *Id.*

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


September 14, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.